In re CAROLINA PARACHUTE
CORPORATION, Debtor.

UNITED STATES of America,
DEPARTMENT OF AIR
FORCE, Appellant,

v.

CAROLINA PARACHUTE
CORPORATION,
Appellee.

Nos. B–87–00203 C–11, C–89–117–G.

United States District Court,
M.D. North Carolina,
Durham Division.

Dec. 8, 1989.

Robert H. Edmunds, Jr., U.S. Atty., Richard Robertson, Asst. U.S. Atty., Greensboro, N.C., and Lt. Col. Brian L. Kessler, Office of the Judge Advocate Gen., U.S. Air Force, USAF/JACN, Washington, D.C., for appellant.

Bonnie Kay Donahue of the firm of Ivey, Ivey & Donahue, Greensboro, N.C., for appellee.

## MEMORANDUM OPINION

HIRAM H. WARD, Senior District Judge.

This matter is before the Court on appeal from a December 23, 1988 order of the bankruptcy judge denying appellant's motion for relief from the automatic stay, 11 U.S.C. § 362(a). Jurisdiction is based on 28 U.S.C. § 158(a). Appellant, the United States Air Force, pointing to deficiencies in delivery under contracts with the debtor, Carolina Parachute Corporation, requested that the stay be modified so that it might terminate those contracts and reprocure the necessary equipment. For the reasons stated below, the Court holds that the automatic stay should have been lifted so that appellant could proceed administratively to terminate the contracts.

## FACTS

Carolina Parachute Corporation has manufactured parachutes and related items primarily for the United States Government under fixed price defense contracts since 1979. In August, 1987, citing a lack of outside working capital, the government suspended progress payments under the debtor's contracts with the Departments of the Army and Air Force. As a result, debtor was forced to file a petition for reorganization under Chapter 11 on October 21, 1987, and now operates its business as debtor in possession.

From the petition date until March 21, 1988, debtor's production was interrupted while alternative operating capital was obtained from outside sources as required by the government for reinstitution of progress payments. The interruption in production required the government to grant the debtor delivery extensions on its contracts. On July 17, 1988, after a complete audit of the company's accounting system, the government recommenced progress payments. Debtor's employees returned to work to fulfill the government contracts. From the resumption of production in March, 1988 through November, 1988 debtor tendered to the government in excess of $771,000 of deliverable items.

In response to the government's representation that a prerequisite for the award of new contracts was confirmation of a plan of reorganization, debtor filed a plan on September 2, 1988. The bankruptcy court set November 9, 1988, as the last day for filing written rejections of the debtor's plan of reorganization and scheduled a hearing on confirmation of the plan for November 10, 1988. On November 9, the government filed a motion for modification of the automatic stay, seeking to have the stay lifted to enable it to terminate the contracts with debtor pursuant to their terms, and stating that it would not consent to assumption of its contracts by the debtor in possession. Although the government filed a ballot rejecting the debtor's reorganization plan, the government did not appear at the confirmation hearing. On November 22, 1988, the bankruptcy court confirmed the plan which provided for assumption by the debtor in possession of debtor's executory contracts with the government. The government did not appeal the confirmation order and its motion to modify the automatic stay remained outstanding.

The bankruptcy court held a hearing on the government's motion for modification of the automatic stay on December 13, 1988.[1] The government presented evidence that as of November, 1988, debtor was 40% delinquent in performing under its modified delivery schedules. (Testimony of Kelly

---

1. On December 12, 1988, the government filed an amended motion for modification, the only change being the deletion of any reference to contracts between debtor and the Army, which are not at issue here.

Brakebill, p. 32). The government asserted that debtor's failure to make timely deliveries paralyzed the parachute training program at Seymour–Johnson Air Force Base. On December 23, 1988, the bankruptcy judge denied the government's motion to lift the automatic stay and enjoined it "... from interfering in any way with the Debtor's confirmed Plan of Reorganization." The government appealed.

## DISCUSSION

■ The Court determines that the outcome of this case is controlled by the interplay of 41 U.S.C. § 15 and 11 U.S.C. § 365(c)(1) as discussed by the Third Circuit in *Matter of West Electronics, Inc.*, 852 F.2d 79 (3d Cir.1988). In *West,* debtor was a defense contractor with a contract to supply missile parts to the United States Air Force. The government sought relief from the stay to permit it to terminate the contract. After the bankruptcy and district courts denied relief on grounds that debtor had the capacity to cure the defaults and perform, the Third Circuit reversed. Although the appellate court recognized that § 362(a) barred termination of the contract without obtaining an order pursuant to 11 U.S.C. § 362(d), it held that under § 365(c)(1) the contract at issue could not be assumed. Section 365(c)(1) provides that the trustee may not assume if "applicable law excuses a party other than the debtor, to such contract ... from accepting performance from ... an entity other than the debtor or debtor in possession ... and ... such party does not consent to such assumption." Accordingly, the court stated:

> [I]f non-bankruptcy law provides that the government would have to consent to an assignment of the debtor's contract to a third party, *i.e.,* someone 'other than the debtor or the debtor in possession,' then the [debtor], as the debtor in possession, cannot assume that contract. This provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment.

*Id.* at 83 (citations omitted).

The Federal Nonassignment Act, 41 U.S.C. § 15, prohibits the assignment of a government contract without the government's consent. Thus, the court held that the contract at issue could not be assumed. According to the Third Circuit, § 365(c)(1) reflects the judgment of Congress that in the context of the assumption and assignment of executory contracts a solvent contractor and an insolvent debtor in possession going through bankruptcy are materially distinct entities. *Id.* at 83.

At the hearing before this Court, debtor argued forcefully that the equities of this situation demand that the Court deny appellant's motion to lift or modify the stay. The Court is aware of the compelling facts of this case, not the least of which is that defense contracts with the government constitute debtor's primary, if not only, source of revenue. Appellant countered with equal force that under the legal principles presented in *Matter of West* the issue is simply whether to preserve the government's right under 41 U.S.C. § 15 to terminate executory contracts. Under this focus, appellant asserts, the specific facts and equities of this case have no relevance.

The bankruptcy court, in its order, distinguished *West* from the instant case, "most notably because in *West,* the government brought an action during the initial stages of a Chapter 11 proceeding when it was unknown what would happen to West Electronics." (*Order,* Dec. 23, 1988, p. 5). This Court determines that the bankruptcy court's distinction fails to reflect an appreciable difference between *West* and the case at bar. Accordingly, the Court will follow the legal reasoning of *West.* Under the plain meaning of 41 U.S.C. § 15 and the analysis employed in *West* the timing of the government's motion, debtor's performance under its contracts with the government, and the financial status of the debtor are all irrelevant factors.

Other courts have also addressed the relationship between 11 U.S.C. § 365(c)(1) and 41 U.S.C. § 15 and concluded that 41 U.S.C. § 15 precludes assumption of a government contract by the debtor in possession. In *In re Pennsylvania Peer Re-*

*view Organ., Inc.*, 50 B.R. 640 (Bankr.M.D. Pa.1985), debtor entered into a contract with the Department of Health and Human Services to review the appropriateness of health care services furnished by the department under the Medicare program. Debtor challenged the government's termination of the contract. Although the bankruptcy court disposed of the case on grounds of judicial preclusion, the court addressed the government's argument that 11 U.S.C. § 365(c)(1) allowed termination of the contract:

> Here, because the applicable statute prohibits the transfer of a government contract "to any other party," the section 365(c) requirement of a general nontransferability statute is satisfied and the Bankruptcy Code itself precludes any assumption of the contract, even where such an assumption might otherwise occur by operation of law.

*Id.* at 646. In *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977 (Bankr.N.D.Ga. 1980), the bankruptcy court interpreted the Anti–Assignment Act to prevent assumption by the debtor in possession of contracts guaranteeing mortgage backed securities issued by the debtor. The court reasoned that the act would prevent a nonbankrupt issuer from assigning such an agreement without the consent of the government.

■ The Court is further persuaded by the assertion that the bankruptcy judge's order affords debtor relief to which, were debtor not in bankruptcy, it would not be entitled: namely, the continuation of its executory contracts with the government. According to its terms, 41 U.S.C. § 15 clearly annuls any contract with the government upon transfer by the other contracting party. "It is well established that the filing of a petition in bankruptcy cannot expand a debtor's rights against a creditor." *In re Penn. Peer Review*, 50 B.R. at 647 (citations omitted). Accordingly, the Court concludes that debtor, simply by filing a Chapter 11 petition, may not perpetuate contracts which it would otherwise be unable to preserve.

Debtor relies on *Erwin v. United States*, 97 U.S. 392, 24 L.Ed. 1065 (1878) and subsequent cases as standing for the proposition that an assignment by operation of law, including a transfer incident to a proceeding in bankruptcy, is an exception to the Anti–Assignment Act. Debtor's reliance is misplaced. *Erwin* addresses the assignment of claims against the government, not the assignment of executory contracts as does the instant case. Cases subsequent to *Erwin* are inapposite because they apply and construe 31 U.S.C. § 203, the Assignment of Claims Act, instead of 41 U.S.C. § 15, which is at issue in this case. *See, e.g., Keydata Corp. v. United States*, 205 Ct.Cl. 467, 504 F.2d 1115 (1974), *Danielson v. United States*, 416 F.2d 408 (9th Cir. 1969).

■ Debtor contends that the government, by its recognition of the assumption, has waived the provisions of 41 U.S.C. § 15. In *Tuftco Corp. v. United States*, 614 F.2d 740 (1980) the court of claims employed a "totality of the circumstances" test to determine if the government, through its knowledge, consent, and actions, has acquiesced in an assignment. Debtor argues that the government, by negotiating and working with the debtor after it became a debtor in possession in the same manner and style as it did before debtor filed its Chapter 11 petition, has recognized the assumption. The government contends, however, that it has sought no new delivery extensions since confirmation of the plan, the point in time at which debtor became a debtor in possession, but has only maintained the *status quo* pursuant to the stay order with regard to the executory contracts. Under *Tuftco* the government's post confirmation actions do not demonstrate its acquiescence in assumption by the debtor in possession. The Court is persuaded by the fact that implementation of the automatic stay left the government with no choice but to maintain the *status quo* with regard to the executory contracts. The government has not waived the provisions of 41 U.S.C. § 15.

Accordingly, following the legal reasoning of the Third Circuit in *Matter of West*

*Electronics*, the Court determines that the automatic stay should have been modified to allow the government to terminate the contract with debtor, pursuant to the provisions of 41 U.S.C. § 15.

IT IS, THEREFORE, CONCLUDED that the December 23, 1988 order of the bankruptcy court be must be REVERSED, and that this matter be REMANDED to the bankruptcy court with instructions to lift the automatic stay as to the appellant.