UNITED STATES of America,
DEPARTMENT OF the AIR
FORCE, Plaintiff–Appellee,

v.

CAROLINA PARACHUTE CORPORA-
TION, Defendant–Appellant.

No. 89–2500.

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1990.

Decided July 12, 1990.

Bonnie Kay Donahue, argued (Edwin R. Gatton, on brief), Ivey, Ivey & Donahue, Greensboro, N.C., for defendant-appellant.

Richard Lee Robertson, Asst. U.S. Atty., Greensboro, N.C., Brian Lloyd Kessler, argued Contract Law Div., Office of the Judge Advocate Gen., U.S. Air Force, Washington, D.C. (Robert H. Edmunds, Jr., U.S. Atty., on brief), Greensboro, N.C., for plaintiff-appellee.

Before SPROUSE, CHAPMAN and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

The district court, 108 B.R. 100, reversed the bankruptcy court and allowed the United States of America, Department of the Air Force, to begin proceedings to terminate certain executory contracts with Carolina Parachute Corporation. The issues raised are (1) whether a bankruptcy court order confirming a reorganization plan is res judicata to a party who, although on notice of the proceeding, neither makes an objection to the proposed plan nor appeals the order confirming it; (2) whether the automatic stay, 11 U.S.C.A. § 362 (West 1979 & Supp.1990), terminates upon confirmation of a reorganization plan; and (3) whether the bankruptcy court had jurisdiction to enjoin the government from interfering with the reorganization plan, and if so, whether this injunction was issued in accordance with Rule 65 of the Federal Rules of Civil Procedure. We affirm in part, vacate in part, and remand to the district court.

## I.

In 1986 the government entered into three contracts with Carolina Parachute providing for the production of drag chute canopies and other items related to parachutes. Pursuant to Federal Acquisition Regulations, each contract incorporated by reference a "Default" clause and a "Termination for Convenience of the Government" clause. See 48 C.F.R. § 52.249–8 (1989); 48 C.F.R. § 52.249–2 (1989). The Default clause granted the government the right to terminate a contract in the event of speci-

fied breaches by a contractor. 48 C.F.R. § 52.249–8. The Termination for Convenience clause provided, in part: "The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." 48 C.F.R. § 52.249–2.

Carolina Parachute has manufactured parachutes and related items for the government since 1979. The government suspended progress payments and, as a result, on October 21, 1987, Carolina Parachute was forced to file a Chapter 11 bankruptcy petition for reorganization under the United States Bankruptcy Code, 11 U.S.C.A. §§ 101, *et seq.* (West 1979 & Supp. 1990). The automatic stay of section 362, which generally prevents third parties from taking action that could affect the property of the bankruptcy estate, immediately went into effect. Carolina Parachute remained in possession of its property and operated its business of manufacturing parachutes and related items as a debtor in possession.

From October 21, 1987, until March 21, 1988, Carolina Parachute's production was interrupted while alternative operating capital was obtained as required by the government before it would resume progress payments. On July 17, 1988, after a complete audit of Carolina Parachute's accounting system, the government resumed progress payments. From the resumption of production in March 1988 through November 1988, Carolina Parachute delivered goods ordered by the government valued in excess of $771,000.

On September 2, 1988, Carolina Parachute filed its Debtor's Plan of Reorganization and Disclosure Statement with the bankruptcy court. On October 21, 1988, the bankruptcy court issued an Order Approving Disclosure Statement with Modifications and set November 9, 1988, as the last day for filing objections to the plan. A hearing for confirmation of the reorganization plan was scheduled for November 10, 1988.

On November 9, 1988, the government filed a Motion for Modification of Automatic Stay to allow it to terminate its contracts with Carolina Parachute.[1] In this motion the government stated that Carolina Parachute "is currently in default under each of its contracts" and that all of the "contracts are subject to the Anti–Assignment Act." A hearing on this motion was scheduled for December 13, 1988.

The confirmation hearing was held as scheduled on November 10, 1988. The plan expressly included the assumption by Carolina Parachute of "[a]ll prime and sub U.S. Government fixed price contracts for the manufacture of parachutes and related items." Despite notification of the confirmation hearing, the government did not attend and did not file an objection to the plan. *See* Bankruptcy Rule 3020(b) (discussing procedures for filing an objection). At the hearing, Carolina Parachute presented uncontroverted evidence relating to the current and future status of the government contracts. The bankruptcy court found that Carolina Parachute "is not in default under the terms of any of the ... Contracts contended to be in default by the U.S. Government in the Brief filed along with its Motion for Modification of the Automatic Stay." The court also found that Carolina Parachute, by negotiating delivery extensions in return for consideration, had "cur[ed] any asserted default of those Contracts based upon delivery deficiencies with said cure being by and with the consent of the U.S. Government." The bankruptcy court entered an order confirming the plan of Carolina Parachute without addressing the government's contention that the contracts were subject to the Anti–Assignment Act. 41 U.S.C.A. § 15 (West 1987). The government did not appeal the confirmation order.

As scheduled, on December 13, 1988, the bankruptcy court held a hearing on the

---

1. Originally, the government sought to also modify the stay as it related to certain United States Army contracts. The government subsequently amended its motion to delete any reference to contracts between Carolina Parachute and the Army. Thus, these contracts are not involved in this appeal.

government's motion to modify the automatic stay. Following another hearing on December 23, 1988, the court entered an order denying the government's motion and enjoining the government "from interfering in any way with the Debtor's Consummation of the Debtor's confirmed Plan of Reorganization." In part, the order stated:

> The Government has failed to appeal this Court's Confirmation of the Debtor's Plan of Reorganization, and thus its express assumption of the Contracts in question, within the applicable appeal period. This Court's Order Confirming the Debtor's Plan of Reorganization is thus a final Order, and under the doctrine of collateral estoppel or under the doctrine of *res judicata*, the Government is precluded from re-litigating the issue of whether the Debtor-in-Possession may assume the Defense Contracts in question.

The bankruptcy court grounded the injunctive portion of its order on its equitable powers under 11 U.S.C.A. § 105.

The government appealed to the district court asserting that the Anti–Assignment Act prevented assumption of the contracts. The district court, without addressing the preclusive effect of the confirmation order, held that the interplay between the Anti–Assignment Act and 11 U.S.C.A. § 365(c)(1) (which precludes the assumption of executory contracts when a party other than the debtor is excused from performance by applicable law) required reversal of the December 23, 1988, order of the bankruptcy court. The district court remanded to the bankruptcy court with instructions to lift the automatic stay as to the government.[2] Carolina Parachute appealed.[3]

## II.

■ As part of a reorganization plan, the debtor in possession, subject to the approval of the court, may assume certain executory contracts. 11 U.S.C.A. § 365.[4] A contract is executory under this provision "if performance is due to some extent on both sides." *Lubrizol Enters. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1045 (4th Cir.1985), *cert. denied*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). When a debtor in possession assumes an executory contract, it takes the "contracts *cum onere*, that is, subject to existing burdens." *In re Chicago, R.I. & Pac. R.R.*, 860 F.2d 267, 272 (7th Cir.1988). In other words, "a debtor may not assume the favorable aspects of a contract ... and reject the unfavorable aspects of the same contract." *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir.1984); *see Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir.1985). An executory contract may *not* be assumed when the debtor is in default unless the debtor takes the remedial steps specified in section 365(b)(1). Neither may a debtor assume an executory contract if "applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from ... an entity other than the debtor or the debtor in possession [and] ... such party does not consent to such assumption." 11 U.S.C.A. § 365(c)(1). Thus, unless otherwise barred by the terms of section 365, a reorganization plan may provide for the assumption of an executory contract. 11 U.S.C.A. § 1123(b)(2).

■ Here, the government, desiring to begin proceedings to terminate the contracts with Carolina Parachute, asserted two grounds in its motion to modify the automatic stay that it contended justified the termination of those contracts. First, the government claimed that the Anti–Assignment Act, which prevents the transfer

---

**2.** The district court did not address the merits of the injunction issued by the bankruptcy court.

**3.** This court has jurisdiction to hear this appeal under 28 U.S.C.A. § 158(d) (West Supp.1990). The order of the district court left the bankruptcy court with no discretion and was thus a final order. *Cf., e.g., Bowers v. Connecticut Nat'l Bank*, 847 F.2d 1019, 1022–24 (2d Cir.1988) (dis-

missing appeal for lack of jurisdiction because order remanding the matter to bankruptcy court left open many possible resolutions).

**4.** Although section 365 refers to a trustee, a debtor in possession may exercise the power of the trustee to assume executory contracts. *See* 11 U.S.C.A. § 1107(a).

of government contracts from the original contracting party to third parties, prevented the assumption of the contracts. This statute states in part:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned.

41 U.S.C.A. § 15. As supporting authority for its position, the government relies on *In re West Elecs., Inc.*, 852 F.2d 79 (3d Cir. 1988). In *West*, the government appealed a denial of its motion to lift an automatic stay, which was filed by the government shortly after the debtor filed its bankruptcy petition. Finding in favor of the government, the *West* court stated that it viewed section 365(c)(1) as setting up the following hypothetical test: Does applicable law, in this case the Anti–Assignment Act, prevent the transfer of a contract to "an entity other than the debtor or the debtor in possession?" If so, then the contract may not be assumed in a reorganization plan unless the government consents. The *West* court reasoned that because the Anti–Assignment Act would annul government contracts if they were transferred to third parties other than the debtor, under section 365(c)(1) the government was excused from accepting performance from the debtor in possession. *See id.* at 82–84. We need not decide whether the Anti–Assignment Act prevents Carolina Parachute from assuming these government contracts because, unlike the situation in *West*, the government failed to object to the plan or to appeal the confirmation order, both of which expressly provided for assumption of these contracts by Carolina Parachute, and under res judicata principles it is now barred from asserting this position.

As a second ground in its motion to modify the automatic stay, the government asserted that Carolina Parachute was in default on its obligations. However, in its confirmation order, the bankruptcy court specifically found that Carolina Parachute was no longer in default and that any previous default had been cured or compensated. Again, because the government neither objected to the plan nor appealed the confirmation order, it is now barred from asserting preconfirmation defaults as a reason for terminating the contracts.

The government argues, however, that it did object and appeal the confirmation order, contending that its motion to modify the automatic stay constituted an objection to the confirmation plan. Thus, it reasons that appeal of the December 23, 1988, bankruptcy court order denying its motion to lift the automatic stay constituted a de facto appeal of the confirmation order. We are not persuaded by such reasoning. Regardless of whether the government's motion can be construed as an objection made in accordance with Bankruptcy Rule 3020(b), its failure to appeal the confirmation order is fatal to this argument. Bankruptcy Rules 8001 and 8002 set out the procedures and time limits for appealing orders of the bankruptcy court, none of which were met by the government. We reject the government's de facto appeal argument as nothing more than an attempt to circumvent the procedures established in Bankruptcy Rule 8001 or the time limits established in Rule 8002.

### III.

The holding of the bankruptcy court that the terms of the confirmed plan were res judicata as to the government is supported by prior decisions of courts that have addressed similar issues. *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050–54 (5th Cir.1987); *In re Sanders*, 81 B.R. 496, 498 (Bankr.W.D.Ark.1987); *see also* 5 *Collier on Bankruptcy*, ¶ 1141.01[1] (15th ed. 1989) (stating that confirmation orders are entitled to res judicata effect). In *Turshen v. Chapman*, 823 F.2d 836 (4th Cir.1987), we stated, " 'The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts.' " *Id.* at 839 (quoting *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966)). "[T]he essential elements of the doctrine are generally stated to be (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in

both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir.), *cert. denied*, 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981); *see also Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir.1986) (citing *Nash County*), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987). Here, the essential elements were met and the district court erred when it failed to recognize that this confirmation order was res judicata as to the parties. *See Harnett*, 800 F.2d at 1313; *Fairmont Aluminum Co. v. Commissioner*, 222 F.2d 622, 625 (4th Cir.), *cert. denied*, 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748 (1955).

## IV.

■ Even though res judicata bars the government from asserting the Anti–Assignment Act or preconfirmation defaults as grounds for terminating these contracts, we hold that the automatic stay no longer prevents it from taking other steps, should it choose to do so, to terminate them. Under section 362(c)(2)(C) the automatic stay continues until "the time a discharge is granted or denied." Section 1141(d)(1)(A) states that the order confirming the plan "discharges the debtor from any debt that arose before the date of such confirmation." Additionally, "the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C.A. § 1141(b). "Consequently, since Confirmation of the Plan has the dual effect of revesting the debtor with title to its property and discharging the debtor from all dischargable [sic] debts, there can be no further application of the automatic stay after confirmation." *In re Herron*, 60 B.R. 82, 83–84 (Bankr.W.D.La.1986); *see, e.g., In re Crawford*, 95 B.R. 491, 492 (Bankr.W.D.Mich. 1988); *In re Sykes*, 53 B.R. 107, 107 (Bankr.W.D.Va.1985); *In re Paradise Valley Country Club*, 31 B.R. 613, 614–15 (D.Colo.1983); *see also Riggs Nat'l Bank of Washington, D.C. v. Perry*, 729 F.2d 982, 986 (4th Cir.1984) (Chapter 7 case stat-

ing that automatic stay ended when debtor was discharged).

The plan contained a specific provision governing Carolina Parachute's discharge: "Entry of the Order of Confirmation of this Plan of Reorganization in these proceedings shall itself be a judicial determination of the discharge of all liabilities...." Thus, once this plan was confirmed, the automatic stay was lifted and the government was free to begin efforts to terminate the contracts. The bankruptcy court, in denying the government's motion to lift the automatic stay after the plan had been confirmed, apparently failed to recognize that the combined effect of confirmation and discharge lifted the automatic stay.[5]

## V.

In addition to denying the government's motion to lift the automatic stay, the bankruptcy court enjoined the government "from interfering in any way with the Debtor's ... confirmed Plan of Reorganization." The government contends that this injunction is so broad that:

> [I]t impermissibly 'rewrites' the contracts.... It has eliminated the Government's right to terminate the contracts assumed by the [reorganized debtor] for post-assumption defaults, thereby extinguishing the Government's contractual rights set forth in the Default clause ... of each contract; and it has eliminated the Government's right to terminate the contracts for the convenience of the Government, pursuant to the Termination for Convenience clause ... of each contract.

The government argues that it has the contractual right to terminate the contracts and the bankruptcy court exceeded its authority by enjoining the exercise of this right.

■ We reject at the outset the government's contention that the bankruptcy court did not have jurisdiction to issue an injunction. Under section 157(a) of Title 28, bankruptcy courts potentially have subject matter jurisdiction over "all civil pro-

---

**5.** The district court reversed the bankruptcy court order, relying on the Anti–Assignment Act, and did not address this issue.

ceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.A. § 1334(b).[6] An action is "related to" Title 11 if its outcome could impact the handling and administration of the bankrupt estate. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir.) (discussing the scope of bankruptcy jurisdiction), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

The record, however, does not indicate what the bankruptcy court intended by the issuance of this injunction. Perhaps the court sought only to emphasize the operation of the automatic stay, which it presumably considered still in effect. If this was the court's intention, the injunction has no effect because the automatic stay terminated upon plan confirmation. In this event, the government is free to exercise whatever termination rights it has under its contracts with Carolina Parachute.

The bankruptcy court may have intended to use its injunctive power under section 105 to issue an injunction independent of the automatic stay.[7] In this event, the injunction did not conform to Rule 65(d) of the Federal Rules of Civil Procedure. *See In re Sykes*, 53 B.R. at 108 (section 105 injunctive power must be exercised in accord with Rule 65). Rule 65(d) requires that "[e]very order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." The bankruptcy court injunction did not comply with Rule 65(d) because factual findings needed to sustain it were not made, nor were the terms of the injunction sufficiently specific or detailed.

Furthermore, assuming the injunction is as broad as the government contends, it may exceed the court's authority under section 105(a). *See In re American Hardwoods, Inc.*, 885 F.2d 621, 624 (9th Cir. 1989) (drawing distinction between jurisdiction and power). The equitable powers of section 105(a) "are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *Official Committee of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988). *But see In re A.H. Robins Co.*, 880 F.2d 694, 701–02 (4th Cir.) (injunction barring certain suits against nondebtor third parties was within the equitable powers under section 105 and not prohibited by contradictory Code sections) (limited to the facts), *cert. denied*, — U.S. —, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). Obviously, issuing an injunction that bars a party from exercising contractual rights provided in assumed executory contracts may conflict with the rule that executory contracts are assumed *cum onere*.

### VI.

In summary, the portion of the district court order that remanded this matter to the bankruptcy court with directions to lift the automatic stay is affirmed. We vacate the remainder of the district court order and remand to the district court with instructions to remand to the bankruptcy court so that, consistent with this opinion, it may clarify the injunction or, if appropriate, dissolve it entirely.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.

---

**6.** Section 1334 vests bankruptcy jurisdiction in federal district courts. Under 28 U.S.C.A. § 157(a) each district court may provide that cases "arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." The United States District Court for the Middle District of North Carolina has referred bankruptcy matters to the bankruptcy court in Standing Order No. 10, issued on August 15, 1984. Thus, because bankruptcy matters are referred from the district court, the jurisdiction of the bankruptcy court is also based on section 1334(b). *See In re Athos Steel and Aluminum, Inc.*, 71 B.R. 525, 532 (Bankr.E. D.Pa.1987).

**7.** Section 105(a) authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.A. § 105(a).