**In re THREE FLINT HILL LIMITED PARTNERSHIP, Debtor.**

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**THREE FLINT HILL LIMITED PARTNERSHIP, Defendant.**

Bankruptcy No. 94–1–6079–PM.
Adversary No. 95–1–A032–PM.

United States Bankruptcy Court, D. Maryland.

June 23, 1995.

Michael Lichtenstein, Swidler & Berlin, Chartered, Washington, DC, for Three Flint Hill Ltd. Partnership.

Patrick Potter, Shaw Pittman Potts & Trowbridge, Washington, DC, for Prudential Ins. Co. of America.

## MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

Before the court are cross-motions for summary judgment filed by Three Flint Hill Limited Partnership ("debtor") and The Prudential Insurance Company of America ("plaintiff" or "Prudential") on plaintiff's

Complaint to Determine the Validity, Priority and Extent of Lien or Other Interest in Property (the "complaint"). This is a core proceeding under 28 U.S.C. § 157(b)(2)(k). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Prudential seeks the court's determination that it holds a valid and perfected security interest in lease proceeds collected by debtor prior to an event of default.

In the cross-motions for summary judg-. ment the parties ask the court to determine whether under Virginia law the loan documents create a valid, perfected security interest in the rents received by debtor prior to an event of default. The court having held a hearing, considered the arguments of counsel, the pleadings and all exhibits attached thereto, will grant debtor's motion for Summary Judgment and deny plaintiff's cross-motion.

## STATEMENT OF UNDISPUTED FACTS

Debtor, a Virginia limited partnership, owns and operates a commercial office building located at 3201 Jermantown Road, Oakton, Virginia. In 1985, debtor obtained a loan from plaintiff in the amount of $19,-450,000.[1] The loan was secured by the property and an assignment of leases and rents. On August 16, 1990, the parties restructured that loan and increased the principal amount to $19,800,000. The loan and security documents were amended to reflect the restructured agreement. The loan documents included an Amended and Restated Note Secured by Amended and Restated Deed of Trust, an Amended and Restated Deed of Trust, an Amended and Restated Conditional Assignment of Rentals, and an Amended and Restated Assignment of Leases. These documents, with the exception of the Assignment of Rentals, were recorded and perfected in accordance with Virginia law. Va.Code § 55–220.1.

Until October, 1994, debtor leased the property to AT & T Communications, Inc. ("AT & T"). When the lease expired, AT & T did not exercise its renewal option and vacated the property. Debtor has not re-

leased the space. Debtor made required payments to plaintiff during the AT & T tenancy. Debtor received its last rental payment from AT & T on October 11, 1994. On October 20, 1994, plaintiff notified debtor, by hand-delivered letter, that payment was due and that a default would occur if payment was not received within five days. Debtor did not tender the payment and therefore defaulted under the loan documents on or about October 25, 1994.

Plaintiff initiated foreclosure proceedings and a foreclosure sale was scheduled for November 23, 1995. On November 15, 1994, an involuntary petition under Chapter 11 of the Code was filed against debtor by one of its general partners pursuant to 11 U.S.C. § 303(b)(3). Debtor consented to the relief requested and an order for relief was entered on December 13, 1994. At the time the petition was filed debtor had approximately $1,100,000 in its possession, all derived from rent paid by AT & T.

Prior to the filing of this case, debtor made a $3,500,000 capital distribution to its partners. At that time, debtor had some indication that AT & T would not renew its lease. The building needs a significant amount of work in order to make it attractive to a new tenant. Debtor's principals elected to distribute the capital rather than reinvest it in rehabilitating the property or paying property taxes due and owing as of June 20, 1994.

## STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the court determines that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91

---

1. The parties dispute whether this note was non-recourse. Resolution of this issue is not neces-sary to the motion before the court. The issue will not be addressed in this opinion.

L.Ed.2d 202 (1986). Summary judgment is not a "disfavored procedural shortcut" but is an important part of the Federal Rules. *Boarman v. Sullivan,* 769 F.Supp. 904, 906 (D.Md.1991). As has been explained by Chief Judge Ervin:

Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *McKinney v. Board of Trustees,* 955 F.2d 924, 928 (4th Cir.1992). In other words, summary judgment should be granted in those cases in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney,* 955 F.2d at 928; *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). In making our determination under this standard, we must draw all permissible inferences from the underlying facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *McKinney,* 955 F.2d at 928.

*Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (C.A.4 1993). While the parties dispute the interpretation to be given, they agree that the loan documents determine the rights of the parties and that Virginia law applies. This court finds that there is no genuine dispute as to a material fact.

## ISSUE PRESENTED

█ The parties agree that the sole issue presented is whether the rents received and held by debtor prior to an event of default are subject to a lien held by plaintiff under the pertinent loan documents and applicable Virginia law.

*Butner v. United States,* 440 U.S. 48, 56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) governs. In *Butner* the Court held that "the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued."

█ Virginia law provides that deeds of trust are contracts and therefore are to be construed by the terms of the documents. Va.Code § 55–59. "[T]he court must look to the intentions of the parties as reflected by their contractual agreements in the deed of trust." *In re Townside Partners, Ltd.,* 125 B.R. 8, 10 (B.C.W.D.Va.1991). The Virginia code also provides that an assignment of rents is perfected when it is properly recorded. Va.Code § 55–220.1. It is undisputed that plaintiff's interest in the rents and leases of debtor's building was perfected on August 20, 1990, when it was recorded.

Plaintiff's interest in the rents is superior to that of other creditors of debtor. What is disputed is exactly what interest the loan documents grant. Debtor argues that all of the documents taken together indicate an interest in the rents and leases that does not become effective until after an event of default. Under this interpretation none of the money currently held by debtor is subject to plaintiff's security interest, because it was all collected by debtor prior to a default. Plaintiff avers that its interest in the rents is absolute and immediate and that the documents allowed debtor to collect, use and enjoy the rents until some event of default.

Each of the loan documents makes reference to the assignment of the rents and leases. The language of the documents, while not identical, is consistent. Each provision that addresses the issue of the assignment refers to an "Event of Default." The right of the plaintiff to collect the rents hinges upon debtor's default. The Deed of Trust states:

[s]o long as no Event of Default shall exist hereunder, Grantor shall have the right to collect and retain said rents, issues, and profits

. . . .

PROVIDED, HOWEVER, that until an Event of Default (as hereinafter defined) shall occur, Grantor shall be permitted to possess and enjoy the property and receive

the rents, issues, and profits thereof, and upon full payment of all indebtedness hereby secured, the property shall be reconveyed and released to Grantor.

Deed of Trust at pp. 3 & 5.

The Assignment of Leases states that:

> NOW, THEREFORE, in consideration of PRUDENTIAL making said loan, the OWNER hereby grants, assigns, transfers and sets over unto PRUDENTIAL each and all of the LEASES described in Exhibit B attached hereto, and all other LEASES upon or affecting the premises now or hereafter during the existence of this Assignment executed, together with any extensions or renewals thereof, and all rentals and income arising from said premises, whether accruing under existing LEASES or under LEASES hereinafter made.
>
> . . . .
>
> ... [U]ntil an Event of Default ... OWNER may receive, collect and enjoy the rents, issues and profits accruing under said LEASE.

Assignment of Leases at pp. 2–4.

The Conditional Assignment of Rentals states:

> OWNER does hereby sell, assign, transfer and set over unto LENDER all of the rents, issues and profits of the aforesaid mortgaged premises, this Assignment to become operative upon the occurrence of an Event of Default ..., and to remain in effect in full force and effect so long as any Event of Default continues to exist.
>
> 1. In furtherance of the foregoing Assignment, OWNER hereby authorizes LENDER, by its employees or agents, at its option, after the occurrence of an Event of Default as aforesaid, to enter upon the mortgaged premises and to collect, in the name of OWNER or in its own name as assignee, the rents accrued but unpaid and in arrears at the date of such Event of Default, as well as the rents thereafter accruing and becoming payable during the period of the continuance of the Event of Default; and to this end, OWNER further agrees that he will facilitate in all reasonable ways LENDER'S collection of said

rents, and will, upon request by LENDER, execute a written notice to each tenant directing the tenant to pay the rent to LENDER.

Conditional Assignment of Rentals at p. 2.

In a section limiting plaintiff's rights to seek a deficiency judgment against Grantor or general partners of Grantor, the Deed of Trust reserves for plaintiff the right to seek "any rents or income from property received by the Grantor after a default under the loan documents." Deed of Trust at p. 55. Read in conjunction with the other documents, this section demonstrates that the parties did not intend for plaintiff to be able to recover from debtor rents collected prior to a default. The language is clear and unambiguous. It is not susceptible to any other conclusion and provides the clearest indication of the intent of the parties.

The facts of this case present an unusual scenario. Neither the parties nor this court have been able to find any cases that directly address this situation. No reported Virginia decisions have been called to the court's attention wherein a secured creditor sought a ruling that it held an interest in pre-default rents. The ordinary debtor does not hold $1.1 million derived from pre-default rental income at the time it files for relief under the Code.

Looking to the cases decided pursuant to Virginia law for guidance, it is this court's opinion that plaintiff does not have an interest in the rents held by debtor that were collected pre-default. All of the loan documents contain the requirement that an event of default occur before plaintiff has the right to collect the rents. The courts are all in accord that the loan documents control the respective rights of the parties. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Hall Colttree Assoc.,* 146 B.R. 675, 677 (B.C.E.D.Va.1992); *In re Vienna Park Properties,* 136 B.R. 43, 51 (S.D.N.Y.) (applying Virginia law), *aff'd,* 976 F.2d 106 (C.A.2 1992).

It is undisputed that plaintiff perfected its interest in accordance with the statutory law of Virginia on August 20, 1990. Perfection of the interest is not at issue, rather, the court

must determine what steps are necessary to enforce this security interest as defined by the loan documents. If the assignment is an absolute assignment the courts have held that it "is enforceable immediately upon default without any further action by the creditor, absent such a contractual provision the secured party holds a 'mere security interest' in the rents under Virginia law, and must obtain possession of the property subject to the lien before collecting the rental income." *Vienna Properties,* 136 B.R. at 52 (citing cases).

■ The parties disagree whether the documents created an absolute assignment or a "mere security interest." The language of the Assignment of Leases, the Deed of Trust, and the Assignment of Rentals does not make reference to an immediate or absolute assignment. The documents all require that there be an event of default before plaintiff's right to collect the rents becomes effective. In *In re Townside Partners,* the court held that the assignment was absolute, however, the language in those documents was distinctly different from the language in these documents. 125 B.R. 8, 9 (B.C.W.D.Va.1991) ("the assignment of rents ... shall be effective immediately upon execution of this Deed of Trust and is not conditioned upon the occurrence of any default hereunder or any other contingency or event.").

■ While language of the loan documents in this case does not lead to the conclusion that an absolute assignment was intended, a determination of the nature of the assignment does not affect the outcome of this case. Under Virginia law the existence of an absolute assignment makes it unnecessary for plaintiff to take possession of the property or have a receiver appointed prior before beginning to collect the rents. *Id.* at 10; *see also Fidelity Bankers Life Ins. Co. v. Williams,* 506 F.2d 1242 (C.A.4 1974). The right to the rents becomes choate upon the occurrence of an event of default. But an absolute assignment does not extend plaintiff's interest to pre-default rents. Prudential has produced no authority for the proposition that a finding of an absolute assignment requires this court to grant the relief requested.

Plaintiff asks this court to follow *Scottsdale Medical Pavilion v. Mutual Benefit Life Ins. Co.,* 159 B.R. 295 (9th Cir. BAP 1993), *aff'd,* 52 F.3d 244 (C.A.9 1995). In *Scottsdale,* the court held that the creditor was entitled to adequate protection for rents that were collected by debtor prior to the creditor notifying the tenants of the default. The court found that the pre-notification rents were cash collateral pursuant to 11 U.S.C. § 363. This case is distinguishable for a number of reasons. First, the *Scottsdale* court was applying Arizona law. Arizona has a statute that provides that an assignment of rents can be effective "before, upon or after a default." *Id.* at 299 (citing A.R.S. § 33–702(B) (West 1990)). Virginia has no correlating statute. Although Prudential asks this court to consider the fact that both states require the same method of perfection, the current dispute revolves around enforcement and not perfection.

The *Scottsdale* decision is further distinguishable by the specific language of the loan documents providing for an assignment that is immediate and absolute. *Id.* at 300. The document created an immediate interest even though the creditor "[did] not have the [immediate] right to enforce that interest by the various methods specified by the statute." *Id.* The loan document gave debtor a conditional right to collect the rent and the court held that debtor's right to collect did not extinguish the interest of the creditor. *Id.*

There is no language in the loan documents in the instant case that indicates that the parties intended for the assignment to be a "present and absolute" assignment. All of the documents condition the right of plaintiff on debtor's default. The Assignment of Leases indicates that the assignment was meant as "additional security" and not the primary security for the loan. The differences in the statute and in the language of the documents taken together make the decision in *Scottsdale* distinguishable from the case before this court.

There is an absence of authority standing for plaintiff's assertion that it is entitled to rental income received by debtor prior to its default under the loan. "[W]hen notice of an assignment of rents is recorded, the property

being secured is of a contingent nature.... Until the borrower defaults the assignee has no rights to the rents." *In re KNM Roswell Limited Partnership,* 126 B.R. 548, 553 (BC N.D.Ill.1991). *KNM Roswell* goes on to discuss how a third party may obtain a security interest in the rents and leases that was superior to that of the secured lender if the assignment limited the interest to rents received prior to an event of default. *Id.* at 553–54.

This decision is consistent with the Virginia cases that have discussed the effect of an assignment of rents and leases. The court finds that pursuant to the loan documents and applicable Virginia law, plaintiff's right to collect the rents after a default does not give it an interest in rents received by debtor pre-default. Plaintiff conceded that it would be unable to pursue the funds had debtor used them to pay creditors. Plaintiff's rights do not increase just because debtor has not expended all of the funds.

Plaintiff avers that as of the date of default, debtors right to "use and enjoy" the rents terminates along with its right to collect the rents. Plaintiff asserts that this leads the logical conclusion that any rents in debtors possession are subject to its security interest. The court disagrees with this averment. The right to use, enjoy and collect the rents terminates upon an event of default. It is only after the default has occurred that the creditor gains rights under these loan documents to interfere with debtor's use of the rents. Once debtor defaults, Prudential had the right to step into its shoes and collect the rents.

Plaintiff asks this court to consider the pre-petition actions of debtor. However, the issues of the appropriateness of the capital distribution and alleged "pre-bankruptcy" planning are not germane to the determination of the nature and extent of plaintiff's interest in the pre-default funds. Plaintiff also asks this court to use its equitable powers under § 105(a) and order debtor to turn over the funds. But "[t]he equitable powers of section 105(a) 'are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules.'" *Department of the Air Force v. Carolina Para-*

*chute Corp.,* 907 F.2d 1469, 1475 (C.A.4 1990). Neither does § 105(a) empower the bankruptcy court to override state law. Nothing prevented the parties from placing in their contract a provision providing the result that Prudential seeks. They failed to do so. The court will not rewrite their contract for them.