[Cite as *255 Fifth St. Holdings, L.L.C. v. 255 Fifth Ltd. Partnership*, 2022-Ohio-851.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

255 FIFTH STREET HOLDINGS, LLC,   :   APPEAL NO. C-210325
                                                 TRIAL NO. A-1607098

       Plaintiff-Appellee,   :

   vs.   :

                          *O P I N I O N.*

255 FIFTH LIMITED PARTNERSHIP,   :

TIC CHEMED SISLIN, LLC,   :

TIC CHEMED PAULSON, LLC,   :

TIC CHEMED ANDERSON, LLC,   :

TIC CHEMED ROSDEN, LLC,   :

TIC CHEMED LEUNG, LLC,   :

TIC CHEMED MYERS, LLC,   :

TIC CHEMED HUECKEL, LLC,   :

TIC CHEMED OJONG, LLC,   :

TIC CHEMED 350, LLC, f.k.a.   :
CHEMED MARGULIES, LLC,
  :
TIC CHEMED COMET, LLC, f.k.a. TIC
CHEMED MANDEL, LLC,   :

TIC CHEMED MALL, LLC, f.k.a. TIC   :
CHEMED LIEBERMAN, LLC,
  :
TIC CHEMED BERKOVICH, LLC,
  :
TIC CHEMED DESERPA ONE, LLC,

TIC CHEMED DESERPA TWO, LLC,   :

TIC CHEMED WALLMAN, LLC,                    :

TIC CHEMED RUTNER, LLC,                     :

TIC CHEMED GRIMM, LLC,                      :

TIC CHEMED POXON-TURNER, LLC,               :

TIC CHEMED WESTERN, LLC, f.k.a.             :
TIC CHEMED FOLKMAN, LLC,

                                            :
TIC CHEMED D BARBEE, LLC,

                                            :
TIC CHEMED KOHL, LLC,

                                            :
TIC CHEMED ZARO, LLC,

                                            :
TIC CHEMED UHLMAN, LLC,

                                            :
TIC CHEMED FLYNN, LLC,

                                            :
TIC CHEMED BROWN, LLC,

                                            :
TIC CHEMED J BARBEE, LLC,

                                            :
TIC CHEMED NUSSBAUM FLP, LLC,

                                            :
TIC CHEMED HARRIS, LLC,

                                            :
TIC CHEMED BERGEN, LLC,

                                            :
TIC CHEMED WRNTSMITH, LLC,

                                            :
TIC CHEMED NEWCOMER, LLC,

                                            :
TIC CHEMED STAUFFER, LLC,

                                            :
TIC CHEMED STULIK, LLC,

                                            :
MRI CHEMED, LLC,

                                            :
    and

                                            :
HAMILTON COUNTY TREASURER,

        Defendants-Appellants.             :

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Case Remanded

Date of Judgment Entry on Appeal: March 18, 2022

*Porter Wright Morris & Arthur LLP* and *James P. Botti, Dickinson Wright PLLC* and *Christopher D. Cathey*, for Plaintiff-Appellee,

*Robbins, Kelly, Patterson & Tucker, LPA*, *Michael A. Galasso, Cohen, Todd, Kite & Stanford, LLC*, and *Donald J. Rafferty*, for Defendants-Appellants.

**BOCK, Judge.**

{¶1} Defendants-appellants 255 East Fifth Limited Partnership, ("borrowers" or "leasehold owners"), as tenants in common, appeal the trial court's entry of a partial summary judgment in favor of plaintiff-appellee 255 East Fifth Street Holdings, LLC, ("lender").

## Relevant Facts and Procedural History

### A.  The Loan Documents

{¶2} This appeal involves a nonrecourse loan that encumbered real estate at 255 East Fifth Street in Cincinnati, Ohio ("the property"). The original lender, Wachovia Bank, National Association and MRI Chemed, LLC, ("MRI") executed a promissory note where Wachovia Bank lent MRI $76,000,000. The parties later signed a "Severance and Modification Agreement," which divided the original note into two notes (collectively, "notes").

{¶3} In the "Open-End Mortgage, Security Agreement and Fixture Filing" ("the mortgage"), the borrowers assigned as security to Wachovia Bank:

(H) All leases * * * and all rents, royalties, issues, profits, bonus money, revenue, income, rights and other benefits (collectively the '***Rents and Profits***') of the [the property], now or hereafter arising from the use or enjoyment of all or any portion thereof or from any present or future Lease or other agreement pertaining thereto * * * and all cash or securities deposited to secure performance by the tenants * * * subject to the provisions contained in Section 2.7 * * *.

{¶4} Section 2.7 of the mortgage provided:

As additional and collateral security for the payment of the Debt * * * Borrower hereby absolutely and presently assigns to Lender all existing and future Rents and Profits. Borrower hereby grants to Lender the sole, exclusive and immediate right, without taking possession of the Property, to demand, collect * * * receive and give valid and sufficient receipts for any and all of said Rents and Profits * * * However, until the occurrence of an Event of Default * * * Borrower shall have license to collect, receive, use and enjoy the Rents and Profits when due and prepayments thereof of not more than one (1) month prior to the due date thereof. Upon the occurrence of an Event of Default, Borrower's license shall automatically terminate * * * and lender may thereafter * * * collect the Rents and Profits * * *.

{¶5} The mortgage also provided that rents were to be deposited into an account for the borrowers' benefit. Within one month after receiving a rent payment, the asset manager was required to pay the borrowers in proportion to their interests, minus amounts retained for improvements or reserves.

{¶6} An "Assignment of Leases and Rents" restated the lender's security interest in the rents and profits "whether now due or hereafter becoming due." Further, it stated that the borrowers had "a revocable license * * * to retain possession of the Leases and to collect and retain the Rents unless and until there shall be an Event of Default * * *. In the event of such Event of Default, the aforementioned license granted to Borrower shall automatically terminate * * * and Lender may thereafter * * * take possession of the Leases and collect the Rents."

5

{¶7} The notes matured on May 11, 2016 ("maturity date"). The borrowers' failure to pay the principal amount in full by the maturity date constituted an "Event of Default," making the full principal under the leasehold notes immediately due. One day before the maturity date, the borrowers' asset manager withdrew $4.39 million from the borrowers' operating account. That money consisted of funds that were generated from rents that the borrowers had collected before the maturity date ("prematurity rents"). The asset manager deposited the prematurity rents into a separate Wells Fargo account that was maintained for the borrowers' benefit. The asset manager left approximately $860,000 in the operating account.

## B. The Foreclosure

{¶8} In December 2016, the lender sued for foreclosure, alleging that it was entitled to the prematurity rents.

{¶9} In April 2017, after the parties failed to negotiate a loan restructuring, the asset manager disbursed $2,000,000 into the borrowers' individual accounts based on the contention that the parties' contract no longer required that a "reserves balance" be maintained to support loan restructuring negotiations. The asset manager left $835,000 in the Wells Fargo account.

{¶10} In May 2017, the lender sought an injunction, asserting that prematurity rents were part of the collateral that secured the notes. The trial court granted the temporary injunction and enjoined the borrowers from transferring $2,830,723.66 from prematurity rents into the borrowers' names. Various borrowers returned approximately $1.1 million thereafter.

C. <u>Motion for Partial Summary Judgment</u>

**{¶11}**  The lender moved for partial summary judgment, seeking foreclosure and the prematurity rents. The borrowers opposed the motion as to the prematurity rents and cross-moved for summary judgment.

**{¶12}**  The magistrate granted the lender's motion for partial summary judgment. The magistrate found that the prematurity rents were collateral under the loan documents.

**{¶13}**  The trial court adopted the magistrate's decision. Citing the first three pages and section 2.7 of the mortgage, the court found that the prematurity rents that were disbursed to the borrowers were the lender's collateral. Relying on the "four corners" of the "loan documents at issue," the court found that, while section 2.7 of the mortgage granted the borrowers a license to "use and enjoy the Rents and Profits collected from the Property," the section did not state that the borrowers were entitled to keep the prematurity rents. Rather, the court found that the section permitted the borrowers to use the rents and profits only until an event of default occurred. Finding that the borrowers had defaulted, the court granted the lender's motion for partial summary judgment and ordered the borrowers to pay the lender $2,830,723.66.

**{¶14}**  The borrowers now appeal.

**Law and Analysis**

**{¶15}**  We review a summary-judgment ruling de novo. *Anderson v. WBNS-TV, Inc.*, 158 Ohio St.3d 307, 2019-Ohio-5196, 141 N.E.3d 192, ¶ 77. Summary judgment is appropriate where the moving party shows that (1) there is no genuine issue of material fact left to be litigated, (2) it is entitled to judgment as a matter of

law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Id.* Courts view the evidence in a light most favorable to the nonmoving party. *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 33.

{¶16} The interpretation of a written contract is a question of law that we review de novo. *Hyde Park Circle, L.L.C. v. Cincinnati*, 2016-Ohio-3130, 66 N.E.3d 99, ¶ 15 (1st Dist.). Contracts that are clear and unambiguous will be enforced according to their terms. *Retirement Corp. of Am. v. Henning*, 1st Dist. Hamilton No. C-180643, 2019-Ohio-4589, ¶ 18.

## Prematurity Rents

{¶17} In *Prudential Ins. Co. of Am. v. Three Flint Hill Ltd. Partnership*, 202 B.R. 706 (Bankr.MD.1995), the issue before the bankruptcy court was whether predefault rent receipts were subject to a lien that was held by the plaintiff under the loan documents and applicable Virginia law. The court held that the creditor's right to collect rents did not give it an interest in predefault rents because the loan documents required an event of default before the creditor's right to collect rents became effective. Thus, the documents gave the creditor a mere security interest rather than an absolute assignment of rents.

{¶18} The deed of trust in *Three Flint Hill* used language similar to section 2.7 of the mortgage: " * * * so long as no Event of Default shall exist hereunder, Grantor shall have the right to collect and retain said rents, issues, and profits." *Id.* at *8. The section further provided that, until an event of default occurred, " * * * Grantor shall be permitted to possess and enjoy the property and receive the rents, issues, and profits thereof * * *." *Id.*

8

{¶19} The *Three Flint Hill* assignment of leases stated that the borrower assigned the lender "each and all of the LEASES" and "all other LEASES upon or affecting the premises now or hereafter during the existence of this Assignment executed, together with any extensions or renewals thereof, and all rentals and income arising from said premises, whether accruing under existing LEASES or under LEASES hereinafter made. * * * Until an Event of Default * * * OWNER may receive, collect and enjoy the rents, issues and profits accruing under said LEASE." *Id.* at *9.

{¶20} The loan documents in this case are clear—the lender's right to prematurity rents is prospective only. The mortgage provided security in rents "now or hereafter arising," subject to section 2.7. Section 2.7 restated the lender's interest in the rents, but qualified that right: "However, until the occurrence of an Event of Default * * * Borrower shall have license to collect, receive, use and enjoy the Rents and Profits * * *. Upon the occurrence of an Event of Default, Borrower's license shall automatically terminate * * * and lender may thereafter * * * collect the Rents and Profits * * *." That qualification gave the borrowers the right to "use and enjoy" the prematurity rents until they defaulted, without giving the lender a prerogative to reach back. Indeed, the documents required the asset manager to transfer those funds to the borrowers within one month of their receipt.

{¶21} Moreover, once collected and deposited into the borrowers' accounts, rents are no longer rents. Instead, they are converted into cash for the benefit of the borrowers. In a nonrecourse loan, a lender has no right to a borrower's noncollateral assets. And here, there is no dispute that the borrowers' operating account was not collateral securing the loan.

{¶22}  We therefore hold that the lender's rights to rents were only those rents that were collected after the maturity date. Any other conclusion would be contrary to the language of the loan documents.

## **Conclusion**

{¶23}  Based on the foregoing, we find that the trial court erred in granting the lender's motion for summary judgment. The borrowers' sole assignment of error is sustained. We therefore reverse the trial court's judgment and remand the matter for the trial court to enter a judgment consistent with this opinion.

Judgment reversed and case remanded.

**MYERS, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion