In re Lawrence Alfred MUNCRIEF, Debtor (Four Cases).

R.J. BROWN, Trustee, Appellee,

v.

MT. PROSPECT STATE BANK,

v.

Joe Bob McADAMS, Appellant.

R.J. BROWN, Trustee, Appellee,

v.

Joe Bob McADAMS, Appellant.

R.J. BROWN, Trustee, Appellee,

v.

MT. PROSPECT STATE BANK, Appellant,

v.

Joe Bob McADAMS.

R.J. BROWN, Trustee, Appellee,

v.

Joe Bob McADAMS.

Nos. 88–2434, 88–2435.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1989.

Decided April 9, 1990.

Kenneth W. Cowan, Fort Smith, Ark. and Joan S. Slezak, Chicago, Ill., for appellants.

Richard E. Worsham, Little Rock, Ark., for appellee.

Before FAGG, Circuit Judge, and HEANEY and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

Joe Bob McAdams and Mt. Prospect State Bank appeal the district court's [1] reversal of the bankruptcy court's denial of

---

1. The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas.

the trustee's petitions to set aside debtor Lawrence Alfred Muncrief's allegedly preferential and fraudulent conveyances of his property. *See* 11 U.S.C. §§ 547, 548(a)(2)(A).[2] We affirm and remand. Both the bankruptcy court and the district court focused on the issue of whether debtor was insolvent on the date of the challenged transfers.

The record evidence reflects that in 1981 debtor and McAdams formed a partnership to conduct real estate ventures. In early 1983 they formed an umbrella company, the First Southern Financial Group, Inc., to house their business activities. First Southern, whose major activity seemed to be in development of real estate known as the Rivermont Project, was eventually rolled over into the Rivermont Group, Inc., a Tennessee corporation.

On October 27, 1983 McAdams obtained a $50,000.00 line of credit from Mt. Prospect which he used to pay the expenses of Rivermont Group. The line of credit was secured by real estate owned by McAdams, and the account bore the signatures of McAdams and debtor. Later in 1983 Rivermont Group entered into discussions with Gary Gibbs in an effort to establish a joint venture to finance the Rivermont Project. Gibbs eventually formed a Louisiana partnership, Rivermark Partnership, to finance the project, and gave debtor a 32% share of the partnership in exchange for the work and contractual agreements he had already completed on behalf of Rivermont Group.

Rivermont Group and Rivermark Partnership were unable to close their arrangement. On December 14, 1983 McAdams transferred $20,000.00 to Rivermont Group's account at Mt. Prospect. Eventually, Rivermark Partnership (with Gibbs as managing general partner) offered to buy back the 32% share given to debtor. Debtor and McAdams discussed and agreed to accept an $800,000.00 promissory note payable to debtor. On January 26, 1984 debtor received a note for $680,000.00; $120,000.00 having been paid directly to Midland Bank of Memphis by Rivermont Partnership.

On February 10, 1984 debtor pledged the $680,000.00 note to the American Bank & Trust Co., a Louisiana bank, as collateral for a $590,000.00 loan; paid $84,000.00 to McAdams; and transferred approximately $50,000.00 to Mt. Prospect to close out the loan account, and an additional $17,000.00 to cover an overdraft on a Rivermont Group checking account. On March 5, 1984 R.J. Brown, on behalf of Esther Muncrief (debtor's mother) and the First National Bank of Hot Springs, Arkansas, filed a petition for involuntary bankruptcy against debtor. Brown eventually withdrew as attorney for Esther and the bank, and was appointed trustee in the involuntary proceeding. As trustee, he filed adversary proceedings seeking to set aside the $84,000.00 payment to McAdams and the $50,000.00 transfer to Mt. Prospect as preferential, and the $17,000.00 transfer to Mt. Pleasant as fraudulent.

The bankruptcy court consolidated the proceedings and set them for hearing.[3] At the hearing the trustee relied primarily on Joint Exhibit 6, a document reflecting debtor's personal financial state as of October 15, 1983, and showing debtor to be solvent in the amount of $1,970,669.00; and to a

---

2. 11 U.S.C. § 547 allows a trustee to void any transfer of the debtor's property made within ninety days of the filing of a bankruptcy petition where the transfer is (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; and (4) one that enables the creditor to receive more than he/she would receive in a Chapter 7 liquidation. Numerous exceptions to the rule are outlined in § 547(c).

11 U.S.C. § 548(a)(2) prohibits transfers made within one year of the filing of a bankruptcy petition if the debtor was insolvent at the time of transfer, and received less than reasonably equivalent value in exchange for the transfer (among other circumstances).

3. Prior to the hearing, Mt. Prospect filed a motion for sanctions against the trustee for failure to respond to discovery requests. The bankruptcy court granted the motion and entered a protective order prohibiting the trustee from producing any (1) documents at trial that had not already been produced for inspection; (2) balance sheet allegedly representing the financial condition of the debtor on February 10, 1984; or (3) expert testimony purporting to establish the debtor's insolvency on the date of the challenged transfers.

lesser degree on Plaintiff's Exhibit 1, an order allowing and disallowing claims; and Joint Exhibit 20, a tender of schedules and statements showing debtor to be solvent in the amount of $16,993.00. The trustee then relied on debtor's testimony to show how debtor's actual financial position as of February 10, 1984 differed from that depicted by the exhibits.

At the close of his case, the trustee moved for judgment and McAdams and Mt. Prospect moved for dismissal on the grounds that the trustee had failed to meet his burden of proving that (1) debtor was insolvent; (2) property transferred was property of the estate; and (3) McAdams and Mt. Prospect received more than they would have received in a Chapter 7 liquidation proceeding.

Regarding the contested transactions at issue, the bankruptcy court found that debtor became liable to Mt. Prospect for $50,000.00 plus interest on October 27, 1983, when he signed a guarantee for the loan taken out by McAdams; and that the debt was completely satisfied on February 10, 1984, within ninety days of the commencement of the Chapter 11 proceeding. The court also found that debtor paid $84,-000.00 to McAdams on February 10, 1984, in payment of an antecedent debt; and paid $17,000.00 to Mt. Prospect on an overdrawn bank account balance for which debtor was not liable.

Next, the court focused on the question of whether debtor was insolvent as of the date of these transactions (February 10, 1984). Based on debtor's financial statement, as amended by debtor's testimony, the court adjusted debtor's assets by (1) reducing the cash to $0 (down $83,400.00); the notes receivable to $25,000.00 (down $250,000.00); the automobiles to $27,000.00 (down $18,000.00); the coin collection to $6,500.00 (down $268,500.00); the value of debtor's business ventures, Coldwell Banker/Resort Realty to $413,000.00 (down $209,800.00); and Reader Insurance to $118,000.00 (down $398,500.00); and (2) adding $681,602.00, the balance of the note received from Rivermont Partnership.

The court adjusted debtor's liability by (1) deducting a $160,000.00 mortgage; (2) adding additional liabilities of $156,000.00 (Grand National Bank), $220,000.00 (First National Bank), and $95,000.00 (Gordon Reader); and (3) allowing additional claims totaling $675,660.00, including a $132,-907.00 claim made in Esther Muncrief's name.

After subtracting debtor's adjusted liabilities from his adjusted assets, the court concluded that debtor was solvent by $55,-900.00. The court also analyzed debtor's financial position using debtor's tender of statements and schedules; after adjusting the statements to reflect debtor's testimony, the court concluded that debtor was solvent by $659,300.00 as of February 10, 1984.

Next, the court noted the only evidence that the creditors received more than they would have under a Chapter 7 liquidation was debtor's opinion that if he had liquidated his property on February 10, 1984, his creditors would not have been paid in full. The court considered this conclusion, alone and unexplained, insufficient to sustain the trustee's burden of proof on the issue.

Finally, as for the $17,000.00 transfer to Mt. Prospect, the court found that debtor was not liable for the amount, but that the trustee's failure to prove debtor's insolvency precluded recovery of this money.

On review the district court concluded that although the bankruptcy court's method of assessing the question of debtor's insolvency was not improper, its findings as to the value of debtor's assets and liabilities were clearly erroneous.

The district court substantially modified the bankruptcy court's evaluations of debtor's assets and liabilities by (1) further decreasing the bankruptcy court's valuation of Coldwell Banker/Resort Realty by $147,119.00; and (2) increasing debtor's liabilities by adding claim # 34 ($159,990.00), and additional debts of $349,682.00 as indicated by debtors Joint Exhibit 1. Accordingly, the district court concluded debtor was insolvent on the date of the transfers by $594,175.00.

The court also rejected McAdams and Mt. Prospect's argument that the transfers were valid because they did not involve debtor's assets, but assets of the Muncrief/McAdams partnership. Finally, the court determined that because debtor pledged the $680,000.00 promissory note from Rivermark Partnership as collateral for the $590,000.00 loan from American Bank, the loan was covered by the "security interest" exception to the earmarking doctrine.[4]

On appeal to this court, McAdams and Mt. Pleasant argue that the trustee failed to carry the burden of proving that (1) debtor was insolvent; (2) McAdams and Mt. Pleasant received more than they would have received under a Chapter 7 liquidation proceeding; and (3) property transferred was property of the debtor's estate. They also argue that the district court erred in concluding that the earmarking doctrine did not apply.

■ In reviewing a bankruptcy court's judgment, ordinarily a district court acts as an appellate court; reviewing the bankruptcy court's legal conclusions de novo, and its findings of fact under the clearly erroneous standard. *See Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1129 n. 3 (8th Cir.1985). The district court may not make its own independent factual findings. If the bankruptcy court's factual findings are silent or ambiguous as to an outcome-determinative factual question, the district court may not engage in its own factfinding but must remand the case to the bankruptcy court for the necessary factual determination. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987).

■ Similarly, in most cases this court may not make an independent factual finding when the bankruptcy court's decision is silent or ambiguous as to a crucial factual issue. *Id.* As the second court of review,

this court asks whether the bankruptcy court's legal conclusions are correct and whether its factual findings are clearly erroneous. *Id.* The burden of showing clearly erroneous findings is especially great where the findings are based primarily on oral testimony. *Horner v. Mary Inst.*, 613 F.2d 706, 713 (8th Cir.1980).

■ However, findings of fact by the district court are not jurisdictional in an appellate court, and we may render a decision (1) when the record sufficiently informs the court of the basis for the trial court's decisions on the material issue, or (2) the contentions in the appeal do not turn on findings of fact. *See Scoggins v. Board of Educ.*, 853 F.2d 1472, 1477 (8th Cir. 1988). In a bankruptcy case, "remand is not necessary when the evidence is documentary, the facts are undisputed or the record presents no genuine issue of material fact." *In re Neis*, 723 F.2d 584, 588 (7th Cir.1983). Much of the crucial evidence in this case is documentary, and thus we may make a decision on some issues without a remand.

■ Moreover, we are aware that the test for finality of bankruptcy orders is more liberal than that generally applied in determining the finality of orders in non-bankruptcy proceedings. *See Kubicik v. Apex Oil Co. (In re Apex Oil Co.)*, 884 F.2d 343, 347 (8th Cir.1989). Indeed, where, as here, the district court has effectively resolved the principal merits of the controversy, *see Vekco, Inc. v. Federal Land Bank (In re Vekco, Inc.)*, 792 F.2d 744, 745 (8th Cir.1986), the decision may be considered final for purposes of appeal. *See Franzen v. Federal Land Bank of Omaha*, 897 F.2d 973 (8th Cir.1990); *Schneider v. United States Dep't of Agric. Farmers Home Admin. (In re Schneider)*, 873 F.2d 1155, 1157 (8th Cir.1989).

---

**4.** New funds provided by a new creditor to or for the benefit of a debtor, for the purpose of paying an obligation owed to an old creditor, are considered "earmarked" and not voidable as a preference. To the extent debtor transfers a security interest in return for the funds, however, they are not considered "earmarked." *See generally* 4 Collier on Bankruptcy ¶ 547.03[2]

(15th ed. 1990) (discussing earmarking doctrine and "security interest" exception); *Brown v. First Nat'l Bank of Little Rock, Ark.*, 748 F.2d 490, 491 (8th Cir.1984) (finding no preference when funds to pay debtor's note came from third-party co-makers and there was no evidence that co-makers received money or property from debtor for paying off the note).

■ In reviewing the testimonial explanation of the exhibits and undisputed evidence, the district court found after recalculation that the bankruptcy court erred in finding debtor solvent since debtor's liabilities exceeded his assets by some $244,-000.00. The district court found that, even so, one might conclude with respect to some findings that the bankruptcy judge gave more or less credence to the debtor's testimony depending on the kind of thing the debtor was testifying to, and thus to a point the solvency decision might stand.

However, the district court went on to find a failure to take into account a number of debts that debtor testified to on the basis of the exhibits, particularly JX1. Upon examination, as indicated, the district court found, correctly we think, that debtor had an additional $349,682.37 in liabilities on the critical date, thus making him insolvent by some $594,000.00.

We have examined the documentary evidence and the critical testimony with respect thereto. Without setting it forth at greater length, and while conceding room for some computational error of minor importance, we conclude that the district court's finding of insolvency was not clearly erroneous and that the bankruptcy court clearly erred.

■ Moreover, we think it clear that the "earmarking" doctrine does not apply. As the district court observed, the Rivermark note was pledged as collateral for the $590,000.00 loan from American Bank. Since the collateral exceeded the amount of the loan, the "security interest" exception to earmarking applies.

For reasons stated, the judgment of the district court is affirmed, and the cause is remanded for further proceedings not inconsistent with this opinion.