**In re Curtis R. CATRON, Debtor.**

**Ramon W. BREEDEN, Jr., Ramon W. Breeden, Jr. and Marion R. Breeden, Trustees, Plaintiffs,**

**v.**

**Curtis R. CATRON, Defendant.**

**Bankruptcy No. 91–25827–T. Contested Matter No. 92–0560–T.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

Sept. 7, 1992.

Joseph T. Libertore, Marcos, Santoro, & Kozak, Portsmouth, VA, for debtor/defendant.

Ross C. Reeves, Peter G. Zemanian, Willcox & Savage, Norfolk, VA, for plaintiff.

Debera F. Conlon, Office of the U.S. Trustee, Norfolk, VA.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Plaintiffs are partners with the debtor in possession in a general partnership formed to develop a shopping mall. By motion plaintiffs seek relief from stay to purchase the debtor's interest in the partnership. On May 1, 1992, the court heard the plaintiffs' motion, and the issue was taken under advisement.

For the reasons given in this opinion I hold that the partnership agreement is an executory contract for personal services not assumable by the debtor and that cause exists to grant plaintiff's motion for relief from stay.

### Findings of Fact

On October 17, 1991, the debtor filed a chapter 11 bankruptcy petition and has operated as debtor in possession since then. On March 6, 1992, the plaintiffs filed a motion seeking relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1) to allow plaintiffs to purchase, in accordance with the terms of the partnership agreement, the debtor's interest in the Virginia general partnership known as Orchard Square Associates. Plaintiffs' mo-

tion also challenges pursuant to § 365(c) any attempt by the debtor to assume the debtor's partnership interest.

Prepetition the plaintiffs and the debtor had formed the partnership to develop the Orchard Square shopping mall. The Orchard Square partnership consists of three general partners: the debtor, who holds 50% interest; Ramon W. Breeden, Jr., individually, who holds 10% interest; and Mr. and Mrs. Breeden, acting as trustees for a revocable trust, who hold 40% interest.

Prepetition the managing general partner, Ramon Breeden, issued two capital calls as authorized by the partnership agreement. Breeden lent the funds, unsecured, to the debtor to enable him to meet the first call. The debtor failed to respond to the second call. In response to both calls each of the other partners contributed their allocated share of capital as well as additional capital to offset the unavailability of capital from the debtor.

The partnership agreement of Orchard Square Associates includes the following pertinent provisions.

Article 5 entitled "Partners, Interests and Capital Contributions" states that the partners jointly and severally guaranteed the shopping center construction loan. It further states that in the event of a partner's failure to meet a capital call, the contributing partners may pursue any and all available legal or equitable remedies against the defaulting partner.

Article 16 entitled "Continuation of the Partnership in Certain Events" provides that upon the bankruptcy of a partner, the partnership is to continue without the winding up of the partnership's affairs; the bankruptcy of a partner will trigger an option by the remaining partners to purchase that partner's interest for the fair market value of partnership assets as established by an independent appraiser.

Article 17 entitled "Termination" lists five occurrences which will invoke a dissolution of the partnership. The list does not include bankruptcy of a partner.

*Discussion and Conclusions of Law*

To briefly summarize the facts, the debtor held an interest in a general partnership prior to his bankruptcy filing. Prepetition he failed to meet two capital calls by the partnership. By the instant motion, the nondebtor partners seek this court's approval to purchase the debtor's interest in the partnership as permitted by the partnership agreement.

Although the debtor has not yet sought court approval for this assumption of the partnership agreement pursuant to 11 U.S.C. § 365(a), his opposition to the present motion has to be premised upon his desire eventually to assume, probably in his plan of reorganization. In fact, the issues raised here are similar to those that would be presented under a motion by debtor to assume the contract.

A substantial obstacle to debtor's assumption of the agreement would be for him to cure his default under the agreement and also to provide adequate assurance of his future ability to perform under the agreement as required by § 365(b)(1). Since these issues have not been clearly raised by the present motion, they will not be considered.

Plaintiffs' motion requires resolution of three issues. (1) Whether the partnership agreement is an executory contract, which, pursuant to 11 U.S.C. § 365(c), the debtor in possession may not assume. (2) Whether, pursuant to 11 U.S.C. § 365(e)(1), the purchase option in the partnership agreement constitutes an impermissible *ipso facto* contract clause. (3) Whether cause exists under 11 U.S.C. § 362(d)(1) to permit lifting the automatic stay to allow the nondebtor partners to exercise their option to buy debtor's partnership interest.

## ASSUMPTION OF PARTNERSHIP AGREEMENT.

██ The partnership agreement is a form of executory contract. *In re Priestley*, 93 B.R. 253 (Bankr.D.N.M.1988). In general a debtor may assume or reject executory contracts under conditions stated in § 365.

Section 365(c)(1) prohibits a debtor's assumption or assignment of an executory contract in several instances, including where applicable law excuses the nondebtor party to the contract from accepting substitute performance of the debtor, and the nondebtor party withholds consent to assumption or assignment.[1] One type of executory contract which cannot be assigned or assumed by a debtor under this provision is a personal services contract, which requires the performance of the party to the contract and not of a substitute. *See* Restatement (Second) of Contracts §§ 318(2), 319(2) (1981). Thus a debtor's prepetition personal services contract cannot be assumed by or assigned to an entity other than the debtor. 2 Lawrence P. King, *Collier on Bankruptcy* § 365.05 (15th ed. 1992).

Fundamentally a partnership is based upon the personal trust and confidence of the partners. Va.Code Ann. § 50–21 (Michie 1989); Uniform Limited Partnership Act § 404 (1992); Black's Law Dictionary 626 (6th ed. 1990). In line with this concept, it has been held that because of the partners' personal relationship and trust, the agreement or contract governing the partnership is essentially a contract for personal services, which renders it also nondelegable and nonassumable. *See Skeen v. Harms (In re Harms)*, 10 B.R. 817, 821 (Bankr.D.Colo.1981).

This court, finding that debtor's general partnership interest constitutes a personal services contract with the other partners, must next determine whether the other partners may block debtor's effective reentry into the partnership. As to this, plaintiffs argue that Catron, as a debtor in possession, is a distinctly separate entity from Catron, the prepetition partner. Therefore, the partners assert, they cannot be forced to accept the debtor Catron as

their partner, and consequently Catron cannot assume the partnership agreement.

Plaintiffs cite cases under § 365(c) that treat a chapter 11 debtor in possession as a separate entity from the debtor who entered the contract prepetition. *See, e.g., United States, Dept. of Air Force v. Carolina Parachute Corp. (In re Carolina Parachute Corp.)*, 108 B.R. 100, 102 (M.D.N.C.1989), *aff'd in part, vacated in part*, 907 F.2d 1469 (4th Cir.1990) ("§ 365(c)(1) reflects the judgment of Congress that in the context of assumption and assignment of executory contracts a solvent contractor and an insolvent debtor in possession going through bankruptcy are materially distinct entities.").

In response, debtor has cited other authority which treats a debtor in possession and the prepetition debtor as one entity and thus avoids the requirement under § 365(c) for the consent of the partners. *See, e.g., In re Cardinal Indus., Inc.*, 116 B.R. 964, 981 (Bankr.S.D.Ohio 1990), holding that where the entity performing an assumed contract is the same as the entity which entered into the contract, mere legal distinctions between the prepetition and post petition entities will not constitute or create an assignment within the meaning intended by Code § 365(c)(1)(A).

Clearly, legal nomenclature is not dispositive. The essential relationship between debtor in possession and the prepetition debtor under the facts of each case determines whether the two are separate entities under § 365(c). In a leading case the Supreme Court stated with regard to a debtor in possession's ability to reject a negotiated labor settlement entered into prepetition:

> We see no profit in an exhaustive effort to identify which ... of these terms [" 'alter ego' or a 'successor employer' of

---

**1.** The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession whether or not such contract, or lease, prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment;

11 U.S.C. § 365(c).

**628**

the prebankruptcy debtor"] represents the closest analogy to the debtor-in-possession.

*NLRB v. Bildisco and Bildisco,* 465 U.S. 513, 522, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 (1984). Although in *Bildisco* the Court ultimately viewed the debtor in possession as the same entity as the prepetition debtor, it limited its ruling to the contractual realities of the labor dispute before it and made no ruling to cover all debtors in possession. *Id.* at 522.

Here, prepetition Catron shared with his fellow general partners the goal of furthering the enterprise of owning and leasing out Orchard Square shopping center. The debtor's allegiance to the partnership can be assumed from the nature of a general partnership. In contrast, post petition the debtor assumed the business of a debtor in possession and forsook allegiance to any one enterprise in order to follow the mandates of the Bankruptcy Code regarding treatment of assets, liabilities and creditors. 11 U.S.C. §§ 1101–46.

Additionally, under Virginia statute the rights of partners in relation to their partnership are determined by eight express rules, subject to any agreement between the parties such as a partnership agreement. Va.Code Ann. § 50–18 (Michie 1989). Among the fallback rules is § 50–18(g), which states, "No person can become a member of a partnership without the consent of all the partners." [2] *Id.*

■ Finally, a partnership is a contractual relationship governed by the terms of its partnership agreement. In this case, the partnership agreement stipulates that upon the bankruptcy of a partner, the remaining partners shall have an option to purchase the bankrupt partner's interest, *i.e.,* shall have an option by which the partners avoid

substitute performance by the partner as a debtor.

Accordingly, a challenge to a debtor in possession's assumption of the partnership interest which debtor held prepetition can be summarized as follows:

Although the partnership agreement is an executory contract, Section 365(c) prevents the Debtor-in-Possession from assuming or assigning the partnership other than such assignment as allowed by [state law].

With regards to partnership activities, [state] law excuses a partner from accepting performance from or rendering performance to an entity other than a partner without all the partners' consent. A Debtor-in-Possession is a different legal entity than the debtor-partner.

*In re Sunset Developers,* 69 B.R. 710, 713 (Bankr.D.Idaho 1987); *accord In re Harms,* 10 B.R. at 822.

Here, I find that Catron as debtor in possession is a separate entity from Catron as the prepetition partner. Furthermore, since the partnership agreement is essentially a personal services contract I am persuaded that § 365(c)(1), in conjunction with other applicable law, prevents the debtor from assuming the partnership agreement over the objection of the nondebtor partners.

IPSO FACTO DISCRIMINATION.

■ Debtor claims that even if the partners have the right under the agreement to purchase his interest, nevertheless Bankruptcy Code § 365(e)(1) invalidates that part of the agreement as an *ipso facto* discrimination against a debtor. Bankruptcy Code § 365(e)(1) recognizes the likelihood of a nondebtor's disaffinity for continuing a prepetition relationship with a party who has filed bankruptcy.[3] There-

---

**2.** Historically Virginia has required the consent of the partners to enable a new member to join the partnership. 1918 V. Acts Part IV, § 18(g); Va.Code Ann. app. § 4359(18)(g) (Michie 1942).

**3.** Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under

such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—(A) the insolvency or financial condition of the debtor at any time before the closing of the case; (B) the commencement of a case under this title; or (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

fore, any clause in a partnership agreement which terminates or diminishes the debtor's interest *ipso facto* upon a partner's filing for bankruptcy is subject to avoidance.

However, § 365(e)(2)(A) provides that in certain circumstances § 365(e)(1) will not apply.[4] I find for the reasons expressed above that the conditions triggering § 365(e)(2)(A) exist in this case; therefore, the purchase option in this case will not be invalidated.

In summary, as a result of the findings discussed above, the court holds the partnership agreement in this case permits the remaining general partners to exercise their purchase option as to debtor's interest in the partnership.

## RELIEF FROM STAY.

 The final issue is whether there is cause for lifting the automatic stay. 11 U.S.C. § 362(d)(1). Here the evidence shows that the debtor failed twice prepetition to meet his obligation to respond to capital calls and that he has no likelihood of meeting future capital calls. The court further finds that the viability of the partnership enterprise depends upon the ability of the debtor, as 50% equity holder, to continue his financial support. Without contribution from the debtor, the remaining partners must significantly increase their own capital contributions far in excess of the proportion they agreed to contribute when they assumed their equity shares.

I conclude that by shifting his share of contribution in effect onto his partners, the debtor has improved his position at their expense. Unless the court lifts the stay to permit the remaining partners to exercise their option to purchase the debtor's share, the debtor will benefit from preservation of a contract which he would otherwise be unable to preserve.

The mantle of bankruptcy shall not be used to cloak the debtor so completely as to shelter those interests which the debtor has no legal right to retain. *See In re Carolina Parachute Corp.,* 108 B.R. at 103.

Accordingly, I find that the burden left upon the remaining partners sufficiently establishes cause under § 365(d)(1) for lifting the automatic stay.

A separate order will be entered.

---

11 U.S.C. § 365(e)(1).

4.  Paragraph (1) of this subsection does not apply to an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—(A)(i) applicable law excuses a party, other than the debtor, to such contract or lease from accept-

ing performance from or rendering performance to the *trustee or to an assignee of such* contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (ii) such party does not consent to such assumption or assignment;

11 U.S.C. § 365(e)(2).