In re Curtis R. CATRON, Debtor.

Ramon W. BREEDEN, Jr. and Ramon W. Breeden, Jr. and Marian R. Breeden, Trustees u/a Mary Jane Breeden, Plaintiffs/Appellees,

v.

Curtis R. CATRON, Defendant/Appellant.

Civ. A. No. 2:92cv793.

United States District Court, E.D. Virginia, Norfolk Division.

Aug. 20, 1993.

---

Frank James Santoro, Joseph Todd Liberatore, Marcus, Santoro & Kozak, Portsmouth, VA, for defendant/appellant.

Peter G. Zemanian, Willcox & Savage, P.C., Norfolk, VA, for plaintiffs/appellees.

## OPINION

REBECCA BEACH SMITH, District Judge.

Curtis R. Catron (hereinafter "Catron"), the debtor, appeals from a bankruptcy or-

der entered September 7, 1992. 158 B.R. 624. In its order the bankruptcy court held that a partnership agreement was an executory contract for personal services, that pursuant to 11 U.S.C. § 365(c) such contract was not assumable by Catron as a debtor in possession, and that cause existed to grant appellee's motion for relief from stay pursuant to 11 U.S.C. § 362(d). While Catron assigns four errors on appeal, the pivotal argument is that the bankruptcy court misinterpreted § 365(c)(1)(A). This court's jurisdiction is predicated on 28 U.S.C. § 158(a).

## I. Background Facts

Catron, Ramon W. Breeden Jr. ("Breeden"), and Ramon W. Breeden Jr. and Marian R. Breeden, as Trustees under the Revocable Trust Agreement of Mary Jane Breeden ("Trustees"), comprise the partners in a partnership established by the Partnership Agreement of the Orchard Square Associates ("Partnership Agreement"). Catron, Breeden, and the Trustees created the partnership for the express purpose of acquiring a parcel of undeveloped land, constructing a shopping center on this land, and then managing the shopping center. Catron contributed to the partnership the parcel of undeveloped land on which the shopping center was subsequently constructed. Breeden, the managing general partner and an experienced developer, supplied expertise in development, financial strength, and the promise of an anchor tenant for the shopping center.

Unfortunately for the partnership, many of the financial projections upon which the partners proceeded were founded on the assumption that the local economy would continue to expand as it had done over the previous several years. As recent history suggests, a decline in the local economy precipitated by Operation Desert Storm upset these forecasts and the project fell short of its predicted lease-up levels and income goals. Consequently, the partnership could not pay its bills from the cash generated by the shopping center tenants. To meet the partnership's financial obligations, Breeden made two capital calls on the partners, one in 1990 and the other in 1991. On both occasions, Catron did not contribute his share as required by the Partnership Agreement. On October 17, 1991, Catron filed a petition for Chapter 11 Bankruptcy.

Breeden and the Trustees then filed under 11 U.S.C. § 362(d) for relief from the automatic stay imposed by operation of law when Catron filed a petition for bankruptcy. Breeden and the Trustees sought relief from the stay in order to exercise a buy-out option contained in the Partnership Agreement, which option was triggered by Catron's filing for bankruptcy.[1] The buy-out option allows the nonfiling partners to buy out the bankrupt partner at a price to be determined either by agreement or by an independent appraiser. The bankruptcy court granted relief from the stay and this matter is now before the court on appeal from that decision.

## II. Standard of Review

Bankruptcy Rule 8013 provides that a district court, giving "due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses," shall not set aside the factual findings of the bankruptcy court unless they are clearly erroneous. Bankr.R. 8013. A bankruptcy court's finding of fact is "clearly errone-

---

1. The term bankruptcy as it is used in the Partnership Agreement includes a Chapter 11 filing. The Partnership Agreement defines bankruptcy as:

    (a) The filing of an application by a Partner for, or consent to, the appointment of a trustee, receiver, or custodian of his assets;

    (b) The entry of an order for relief with respect to a Partner in proceedings under Title 11 of the United States Code, as amended or superseded from time to time;

    (c) The making by a Partner of a general assignment for the benefit of creditors;

    (d) The entry of an order, judgment or decree by any court of competent jurisdiction appointing a trustee, receiver or custodian of the assets of a Partner; or

    (e) The failure by a Partner generally to pay his debts as the debts become due within the meaning of Section 303(h)(1) of the United States Bankruptcy Code or the admission in writing of his inability to pay his debts as they become due.

Partnership Agreement at 2.

ous" "when it is (1) not supported by substantial evidence; (2) contrary to the clear preponderance of the evidence; or (3) based upon an erroneous view of the law." *In re Rape*, 104 B.R. 741, 747 (W.D.N.C.1989) (quoting *In re Bartlett*, 92 B.R. 142, 143 (E.D.N.C.1988)). *Cf. In re Hammer*, 112 B.R. 341, 345 (Bankr. 9th Cir.1990) ("A trial court abuses its discretion if it rests its conclusions on clearly erroneous factual findings or an incorrect legal standard").

■ The district court reviews *de novo* conclusions of law. *In re Bryson Properties, XVIII*, 961 F.2d 496, 499 (4th Cir. 1992); *see also, Brown v. Mt. Prospect State Bank (In re Muncrief)*, 900 F.2d 1220, 1224 (8th Cir.1990); *Arizona Appetito's Stores, Inc. v. Paradise Village Inv. Co. (In re Arizona Appetito's Stores, Inc.)*, 893 F.2d 216, 218 (9th Cir.1990); *Finney v. Smith*, 141 B.R. 94, 97 (E.D.Va.1992) (citing, *e.g., United States Trustee v. Kinser*, 128 B.R. 417, 418 (W.D.Va.1991)); *Bangert v. McCauley (In re McCauley)*, 105 B.R. 315, 318 (E.D.Va.1989).

### III. Analysis

On appeal Catron assigns four grounds of error. First, he contends that the bankruptcy court misconstrued 11 U.S.C. § 365(c)(1)(A), which restricts the types of executory contracts a bankruptcy trustee or debtor in possession may assume or assign. The bankruptcy court concluded that a partnership agreement constituted the type of executory contract that 11 U.S.C. § 365(c)(1)(A) barred the debtor, Catron, from assuming. Second, Catron disputes the bankruptcy court's holding that as a debtor in possession, he was a separate and distinct legal entity from the prepetition debtor for purposes of 11 U.S.C. § 365(c). Third, Catron maintains that the bankruptcy court erroneously held that 11

U.S.C. § 365(e)(1) did not invalidate the provision in the Partnership Agreement permitting the nonbankrupt partners to buy out his interest. Catron contends that the buy-out provision, because it is triggered by a partner's filing for bankruptcy, constitutes an impermissible "ipso facto" clause and is thus voidable under the Bankruptcy Code. Finally, he argues that the bankruptcy court erred when it found cause to lift the mandatory stay imposed pursuant to § 362(a). The court addresses each of these assignments of error in the opinion that follows.

### 1. Interpretation of § 365(c)

The court must first determine whether § 365(c) permits Catron, as a debtor in possession, to assume the rights and duties of the Partnership Agreement. The interpretation of a statute is a question of law, and thus this court's review is *de novo*.

The relevant portion of § 365(c) states:

The trustee may not assume or assign any executory contract ... of the debtor, ... if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties; *and*

(B) such party does not consent to such assumption or assignment.... ...

11 U.S.C. § 365(c)(1) (emphasis added). For purposes of clarification, the court notes that while the statute speaks only of trustees, § 1107(a) makes clear that it also applies to debtors in possession.[2]

---

**2.** Section 1107(a) states:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, *a debtor in possession shall have all the rights, ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter.*

11 U.S.C. § 1107(a) (emphasis added). The case law also plainly supports this position. *Wolf v.*

*Weinstein*, 372 U.S. 633, 649, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963) ("Moreover, the duties which the corporate Debtor in possession must perform during the proceeding are substantially those imposed upon the trustee...."); *Department of the Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1472 n. 4 (4th Cir.1990) ("Although section 365 refers to a trustee, a debtor in possession may exercise the power of the trustee to assume executory contracts."); *In re West Electronics Inc.*, 852 F.2d 79, 82 (3d

Catron contends that his status as a debtor in possession exempts him from the sweep of § 365(c), permitting him to assume the Partnership Agreement. Specifically, he argues that the language in subsection (1)(A) should not be construed literally. A literal reading of the statute prohibits assumption or assignment of executory contracts by the trustee or debtor in possession if 1) the contract is nonassignable under "applicable law" and 2) the non-debtor parties to the contract, i.e., Breeden and the Trustees, do not consent to its assumption or assignment. Rather, he asserts that the statute was meant to prohibit the assumption or assignment of contracts only when the nondebtor parties to the contract would actually be forced to accept performance from or render performance to a party *other* than the debtor or the debtor in possession. Appellant's Br. at 7, 9, 17.

In response, the appellees argue that 365(c) proscribes the assumption of this "type" of agreement and that this proscription also applies to Catron because he is a debtor in possession. Briefly, they contend that § 365(c)(1)(A) articulates a hypothetical test for determining when a contract may be assumed or assigned by a trustee or debtor in possession. In this case, the Partnership Agreement constitutes the type of contract that may not be assumed or assigned under the hypothetical test without the consent of Breeden and the Trustees. For the reasons explained herein, this court concurs with the appellee's position and thus AFFIRMS the bankruptcy court's interpretation of § 365(c).

To understand the position embraced by the bankruptcy court, the court finds it helpful to "walk through" the language of the statute in a "step-by-step" fashion. At this stage, the court will interpret the language of § 365(c) literally in the manner followed by the bankruptcy judge and suggested by the appellees. The statute begins "[t]he *trustee* may not assume or assign...." (emphasis added). As noted previously, this prohibition on assumptions and assignments also applies to a debtor in possession.[3] Thus, the first issue the court must consider is the legal status of the appellant, Catron, in order to determine whether the statute applies to him.

Before Catron filed for bankruptcy, he was simply a partner in the Orchard Square Partnership, with the concomitant rights and obligations afforded partners by the Partnership Agreement. Upon filing a petition, however, he became a "debtor in possession." The term "debtor in possession" generally "refer[s] to a debtor who during the pendency of a case prior to confirmation retains property in the fiduciary capacity of a trustee of the estate." *In re Grinstead*, 75 B.R. 2, 3 (Bankr. D.Minn.1985). "[T]he debtor in possession not only receives the powers of a trustee, but actually stands in the shoes of the trustee in *every* way." Lawrence J. La Sala, *Partner Bankruptcy and Partnership Dissolution: Protecting the Terms of the Contract and Ensuring Predictability*, 59 Fordham L.Rev. 619, 632–33 (1991) (emphasis added). Clearly, then, Catron's status as a debtor in possession subjects him to the restrictions imposed by § 365(c).

Next, this court must determine whether § 365(c) permits Catron to assume the Partnership Agreement. To resolve this issue the court must address two subsidiary questions. First, because the statute does not govern the assumption or assignment of all contracts, only executory contracts, the Partnership Agreement must be an executory contract. Second, the statute refers to the "applicable law." Thus, this court must determine what constitutes the "applicable law." After answering these two threshold questions, the court then turns to the general question posed by the statute: whether "applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from

Cir.1988); *In re Tycon I Bldg. Ltd. Partnership,* 129 B.R. 78, 81 (Bankr.E.D.Va.1991) (debtor in possession enjoys generally the same powers and duties as would a trustee).

3. *See supra* at 632–33 and note 2.

or rendering performance to an entity other than the debtor or the debtor in possession." 11 U.S.C. § 365(c)(1)(A).

Both parties concede that a partnership agreement is an executory contract. Appellant's Br. at 20 ("Since the Partnership Agreement is an executory contract. . . .") and 21 n. 6 ("Neither party has attempted to dispute the overwhelming weight of authority which concludes that a partnership agreement is an executory contract." (citations omitted)); Appellee's Br. at 5 ("The debtor apparently seeks to assume the Partnership Agreement as an executory contract. The Bankruptcy Code is quite clear, however, that not all executory contracts may be assumed by a debtor." (footnote omitted)). Consequently, the court will assume without discussion that a partnership agreement is an executory contract, a position followed by the majority of cases. *See In re Priestley*, 93 B.R. 253, 258–59 (Bankr.D.N.M.1988); *Burley v. American Gas & Oil Investors (In re Heafitz)*, 85 B.R. 274, 284 (Bankr.S.D.N.Y. 1988); *In re Corky Foods Corp.*, 85 B.R. 903, 904 (Bankr.S.D.Fla.1988); *In re Sunset Developers*, 69 B.R. 710, 712 (Bankr.D.Idaho 1987); *Skeen v. Harms (In re Harms)*, 10 B.R. 817, 821 (Bankr.D.Colo. 1981).

In regard to the second question, courts have generally interpreted the words "applicable law" to mean "applicable nonbankruptcy law." *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir.1988) (assuming without discussion that the "applicable law" in a case involving a federal contract was the federal Anti–Assignment Act, 41 U.S.C. § 15); *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 28 (1st Cir.1984) (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 348 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6304; S.Rep. No. 95–989, 95th Cong., 2d Sess. 59 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5845.) (holding that the "applicable law" in a case involving the assignment of a Ford franchise was Rhode Island's "Regulation of Business Practices Among Motor Vehicle Manufacturers, Distributors and Dealers" Act); *Pension Benefit Guaranty Corp., Conti-*

*nental Airlines, Inc. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 943 (5th Cir.1983) (assuming without discussion that the "applicable law" governing leases for the use of facilities and terminal space at Washington National Airport was the Washington Airport Act). Given that this case involves the assumption of a partnership agreement created pursuant to Virginia law, the applicable nonbankruptcy law is Virginia's partnership law.

Consequently, the only remaining question the court must determine is whether Virginia's partnership law, the "applicable law," excuses Breeden and the Trustees, the parties to the contract "other than the debtor, . . . from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession." 11 U.S.C. § 365(c)(1)(A). As the basis of its partnership law, Virginia, like most states, has adopted the Uniform Partnership Act ("UPA"). Several relevant sections of Virginia's partnership law lead this court to conclude that Breeden and the Trustees are excused "from accepting performance from or rendering performance to a party other than [Catron]."

First, the section entitled "Assignment of partner's interest" states:

A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, *nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books;* but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.

Va.Code Ann. § 50–27 (Michie 1989) (emphasis added). This section clearly excuses partners from *rendering* performance to nonpartners. Specifically, the partners need not comply with Va.Code Ann. § 50–19, which imposes on partners a duty to

provide their fellow partners with access to and the ability to inspect and copy the partnership books. Nor must they comply with Va.Code Ann. § 50–20, which mandates that partners "render on demand true and full information of all things affecting the partnership to any partner...."

■ Alternatively, Va.Code Ann. § 50–27 excuses partners from *accepting* performance from nonpartners for it states that an assignee is not entitled, "during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs...." Similarly, Va.Code Ann. § 50–18(g) excuses Breeden and the Trustees from both accepting performance from and rendering performance to a party other than Catron, i.e., the debtor or the debtor in possession. It states: "No person can become a member of a partnership without the consent of all the partners." Va.Code Ann. § 50–18(g). Because a partner must accept performance from and render performance to only his/her fellow partners, and because membership in the partnership is conditioned on the consent of the partnership's current partners, the court concludes that § 50–18(g) effectively excuses the nondebtor parties to the contract, Breeden and the Trustees, from accepting performance from or rendering performance to a party other than Catron.

■ For these reasons, the court concludes, based on the facts and applicable law, that this Partnership Agreement is the type of contract that cannot be assumed under § 365(c)(1)(A), absent the consent of the nondebtor parties as required by 11 U.S.C. § 365(c)(1)(B). Here, the other partners, Breeden and the Trustees, have unequivocally withheld their consent, as evidenced by this legal proceeding. Therefore, Catron, as debtor in possession, cannot assume the Partnership Agreement.

Appellant contends that the court errs when it reads § 365(c)(1)(A) literally as stating a hypothetical test for when assumption or assignment should not be per-

mitted. Rather, he asks the court to read § 365(c)(1)(A) to bar the assumption of executory contracts only when the nondebtor parties, Breeden and the Trustees, would actually be forced to "accept[ ] performance from or render[ ] performance to an entity *other than the debtor or the debtor in possession.*" 11 U.S.C. § 365(c)(1)(A). In effect, appellant advocates reading the statute to say "the [debtor in possession] *may* assume *but not* assign ..." rather than reading the statute as it is written— "the [debtor in possession] may not assume or assign...." Because appellant is a debtor in possession, his interpretation of § 365(c)(1)(A) would permit him to assume the Partnership Agreement.

In support of his position, appellant asserts that a literal reading of § 365(c)(1)(A) produces nonsensical results with respect to language contained in § 365(c) and § 365(f). To avoid this result, he asks the court to construe § 365(c)(1)(A) in a manner that gives proper effect to the language contained in § 365(f).[4] His source for this structural argument appears to be a case cited in his briefs, *In re Cardinal Indus., Inc.*, 116 B.R. 964 (Bankr.S.D.Ohio 1990), that reached a conclusion directly contradicting this court's conclusion in the case at bar.

In *Cardinal Industries*, the bankruptcy court summarized the argument of the trustee as follows:

[T]he Trustee argues that if nonassignability of a contract is sufficient as a matter of law to preclude assumption by the trustee, then there was no reason for Congress to provide that the trustee "may not assume *or assign*" such contracts. Given that § 365(f)(2)(A) requires that a trustee must first be able to assume an executory contract before it can be assigned, the Trustee contends it would have been sufficient to simply state in subsection (c) that the trustee cannot assume such contracts. The inclusion of the words "or assign" in

---

4. Appellant did not raise this argument in his initial brief or in his rebuttal brief, but only at oral argument. Consequently, the court's only

source for the substance and gist of appellant's argument is what was stated at the hearing.

§ 365(c)(1) would not be superfluous, however, if the nonassignability of a contract under applicable state law does not necessarily preclude a debtor from assuming the contract for the purpose of performing its prepetition delegations under the contract. To the contrary, the Trustee argues that the inclusion of the words "or assign" to subsection (c)(1) serves the function of clarifying that the debtor in such circumstances may be able to *assume* but not *assign* an executory contract.

*Id.* at 977 (emphasis in original).

■ This argument founders on its initial assumption: that nonassignability of a contract is *sufficient* as a matter of law to preclude assumption by the trustee or the debtor in possession. Under § 365(c)(1), nonassignability of a contract is a necessary but not a sufficient condition to preclude assumption. Rather, the statute also requires that the nondebtor parties to the contract fail to consent to the assumption or assignment of the contract.[5] Once the nondebtor parties consent to the assumption of an executory contract found to be nonassignable under the hypothetical test articulated in § 365(c)(1)(A), the "or assign" language of that section comes into play. At that point, the nondebtor parties again have the power to authorize or veto the assignment of such contract. Consequently, this court concludes that the appellant's contention that a literal reading of § 365(c)(1)(A) renders the "or assign" language in that subsection superfluous, is incorrect.

Appellant also advances a second argument based on the structure of the statute: that a literal reading of § 365(c)(1) is inconsistent with § 365(f).[6] The relevant portion of § 365(f) reads:

(1) *Except as provided in subsection (c) of this section, notwithstanding a provision* in an executory contract ... of the debtor, or *in applicable law, that prohibits, restricts, or conditions the assignment of such contract ...*, the trustee may assign such contract ... under paragraph (2) of this subsection;
....

(2) The trustee may assign an executory contract ... of the debtor only if—

(A) the trustee assumes such contract ... in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract ... is provided, whether or not there has been a default in such contract....

11 U.S.C. § 365(f) (emphasis added).

The court agrees with the appellant that, when applicable law precludes assignment of the contract, § 365(f)(1) is rendered surplusage. In that case, by the specific exception carved out in § 365(f)(1), § 365(c)(1) governs and any additional measure of protection § 365(f) affords to nondebtor parties is inconsequential when juxtaposed with the veto power § 365(c)(1) confers. However, when a contract is found to be assignable under applicable law, then § 365(f), not § 365(c)(1), governs and affords the nondebtor parties to the contract some limited, though lesser, protection.

Conflict between subsections (c) and (f) of § 365 is inescapable because of the contradictory language found at the beginning of § 365(f)(1), specifically the exception carved out for § 365(c) and the reference to "applicable law" that immediately follows it. As explained previously, § 365(c)(1)(A) operates to restrict the assumption or assignment of executory contracts, if applicable law excuses the nondebtor parties to a contract from accepting substitute performance, i.e., if under applicable law the contract is found to be nonassignable. The subsection (c) exception, however, contradicts the portion of § 365(f)(1) that immedi-

---

5. Section 365(c)(1) states: "The trustee may not assume or assign any executory contract ... if—(1)(A) applicable law excuses a party, other than the debtor, ... *and* (B) such party does not consent to such assumption or assignment...." (emphasis added).

6. This argument was not put forward in appellant's brief but was advanced at oral argument. *See supra* note 4.

ately follows it, which reads "notwithstanding a provision ... in applicable law, that prohibits, restricts, or conditions the assignment of such contract." In other words, while § 365(c) explicitly directs the court to consider whether "applicable law" prohibits assignment, the language "notwithstanding a provision ... in applicable law, that prohibits ... assignment" of § 365(f) just as explicitly directs the court to ignore the applicable law.[7]

The two clauses at the beginning of § 365(f) simply cannot be reconciled. Thus, the court must either ignore the subsection (c) exception or ignore the "applicable law" language of subsection (f). *See generally United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) ("[I]nternal inconsistencies in [a] statute must be dealt with."). The court concludes that disregarding the "applicable law" language is the more sensible construction for two reasons.

First, were the court to adopt its converse and give effect to the language instructing the court to disregard applicable law, the subsection (c) exception to (f)(1) would be rendered totally nugatory; the rule would swallow up the exception. *See generally, MacEvoy Co. v. United States,* 322 U.S. 102, 107, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944) (" 'Specific terms prevail over the general in the same or another statute which otherwise might be controlling.' " *quoting Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932)). Second, disregarding the "applicable law" language produces a more sensible result under the statute. Under this scenario, parties to contracts found to be nonassignable under applicable law receive a greater measure of

protection than parties to contracts found to be assignable under applicable law. For example, when an executory contract is nonassignable under applicable law, § 365(c) governs both its assumption and assignment and confers on the nondebtor parties to the contract the power to veto its assumption or assignment. On the other hand, when an executory contract *is* assignable under applicable law, § 365(f) governs and requires only that the "trustee assume[ ] such contract ... in accordance with the provisions of this section," and that the assignee provide "adequate assurance of future performance"—clearly lesser measures of protection than the power to veto the assumption or assignment of a contract altogether. Such a construction is sensible, for it dovetails with what one would expect, i.e., that the legislature would want to provide greater protection to contracting parties in cases involving nonassignable contracts than it would to contracting parties in cases involving assignable contracts. For these reasons, the court is unable to adopt a construction of § 365(f)(1) that gives effect to the words "applicable law" contained in that subsection and at the same time give any meaning to the specific exception carved out in § 365(c)(1).

The divergent legal obligations of the prepetition debtor and the postpetition debtor in possession provide an additional reason for rejecting appellant's proposed interpretation of subsection (c)(1). Before Catron filed for bankruptcy, he owed a fiduciary obligation to his partners pursuant to the Partnership Agreement. Once he filed his petition, however, his fiduciary allegiances shifted to his creditors.[8] Con-

---

7. Courts have wrestled with this problem with differing results. *Compare In re Pioneer Ford Sales, Inc.,* 729 F.2d 27, 29 (1st Cir.1984) (court finds no inconsistency in the statutory language, concluding that § 365(f)(1) applies "only when the contract is *not* silent about assignment") (emphasis in original) *with In re Taylor Manufacturing, Inc.,* 6 B.R. 370, 372 (Bankr.N.D.Ga. 1980) (court notes statutory inconsistency and concludes "the exception to the general rule of the assignability of contracts was intended by Congress to be applied narrowly and to such circumstances as contract for the performance

of nondelegable duties"). Neither of these results is persuasive to this court. *See infra* at 637–38 and notes 9 & 10.

8. As the bankruptcy court aptly stated:

[P]repetition Catron shared with his fellow general partners the goal of furthering the enterprise of owning and leasing out Orchard Square shopping center. The debtor's allegiance to the partnership can be assumed from the nature of a general partnership. In contrast, postpetition the debtor assumed the business of a debtor-in-possession and forsook

sequently, the court disagrees with appellant, who maintains that "[h]is role, responsibility and identity after the filing of his Chapter 11 petition [we]re virtually unaltered." Appellant's Br. at 18. To conclude that Catron as a prepetition debtor and Catron as a postpetition debtor in possession are the same legal entity because they are the same person overlooks this fundamental transformation of Catron's legal obligations. Moreover, to permit Catron as a debtor in possession to assume the Partnership Agreement without Breeden's and the Trustees' consent would in effect be allowing him "to have his cake and eat it too," by enjoying the benefits of the agreement without the reciprocal obligations. While Breeden and the Trustees would owe a fiduciary obligation to Catron, Catron's primary obligation would be to his creditors not to Breeden and the Trustees. For this additional reason, the court declines to follow the path laid out by the appellant.[9]

Two circuit courts that have addressed the interpretation of § 365(c)(1)(A) concur with the general position adopted by this court. In *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir.1988), a debtor in possession sought to assume a contract with the federal government, which contract could be assigned only under federal law with the government's consent. The Third Circuit, stating that § 365(c)(1) "creates a hypothetical test—*i.e.*, under the applicable law, could the government refuse performance from 'an entity *other* than the debtor or the debtor in possession,'" ruled that "West could not force the government to accept the 'personal attention and services' of a third party without its consent." *Id.* at 83. Consequently, it concluded that West as a debtor in possession could not assume the contract. *Id.*

Similarly, in *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 29 (1st Cir.1984), the court considered whether a bankrupt Ford dealer could assign its franchise to a Toyota dealer without Ford's consent. In dicta, the First Circuit stated:

> The language of ... section [365(c)(1)(A)] does not limit its effect to personal service contracts. It refers *generally* to contracts that are not assignable under nonbankruptcy law. State laws typically make contracts for personal services nonassignable (where the contract itself is silent); but they make other sorts of contracts nonassignable as well.

*Id.* at 29.[10]

Accordingly, for the reasons enumerated above, the court AFFIRMS the bankruptcy court's conclusion of law that the Partnership Agreement was the "type" of executory contract that § 365(c)(1) barred Catron as a debtor in possession from assuming.

### 2. Debtor In Possession Separate and Distinct Legal Entity Under § 365(c)

Catron also assigns as error the bankruptcy court's finding that Catron as a debtor in possession is a separate legal entity from Catron as the prepetition partner. Having already addressed this is-

---

allegiance to any one enterprise in order to follow the mandates of the Bankruptcy Code regarding treatment of assets, liabilities and creditors.
Mem.Op. 158 B.R. at 628.

**9.** In his rebuttal brief, appellant raises an additional issue that the court finds to be of no moment. He contends that the bankruptcy court rested its legal conclusions on a finding that a partnership agreement is essentially a personal services contract. *See* Appellant's Rebuttal Br. at 4–5. Irrespective of whether this is the case, this court finds that the repeated distillation of the phrase "if applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession" to encompass only personal services contracts is misleading and an incorrect restatement of the law. As stated in the Appellee's Brief, "nowhere in § 365(c)(1) do the words 'personal services' appear." Moreover, the Congress, if it intended to limit the scope of § 365(c) or § 365(f) to cases involving personal services contracts, surely could have and would have so stated. *See generally In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 29 (1st Cir.1984).

**10.** Although this court agrees with the general position advanced by the First Circuit in *Pioneer Ford Sales*, this court diverges from the First Circuit on the narrow issue of whether the statutory language contained in § 365(c) and § 365(f) conflicts. *See supra* note 7.

sue,[11] the court will not revisit it in depth. However, the court notes that the statute itself makes no reference to whether the prepetition debtor and the debtor in possession are the same legal entity. In addition, the court concurs with the view of the appellees that

"separate entity" is simply a handy label for describing the policies underlying the *objective* test mandated by section 365(c)(1). The phrase merely underscores ... that partnership agreements are of the type of contract which cannot be assumed in bankruptcy; as employed by the bankruptcy court below, the phrase is merely explanatory.

Appellee's Br. at 16.

Accordingly, the court AFFIRMS this finding of the bankruptcy court.

### 3. Interpretation of § 365(e)

The appellant's third assignment of error is that the bankruptcy court mistakenly held that 11 U.S.C. § 365(e)(1) did not invalidate the provision in the Partnership Agreement permitting the nonbankrupt partners to buy out the appellant's interest upon the appellant's filing for bankruptcy. The bankruptcy court concluded that the exception to § 365(e)(1) provided in § 365(e)(2) applied to this case.

Section 365(e) states in pertinent part:
(1) Notwithstanding a provision in an executory contract ..., or in applicable law, an executory contract ... of the debtor may not be terminated or modified, and any right or obligation under such contract ... may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract ... that is conditioned on—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; ...

(2) Paragraph (1) of this subsection does not apply to an executory contract ... of the debtor, whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties, if—

(A)(i) applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to the trustee or to an assignee of such contract ..., whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties; and

(ii) such party does not consent to such assumption or assignment; ....

To dispense briefly with this argument, the court underscores that the language of the § 365(e)(2)(A)(i) exception tracks almost verbatim the language found in § 365(c)(1)(A). For this reason, the analysis used to dispose of appellant's argument with respect to § 365(c) applies with equal force to appellant's § 365(e) argument. Thus, the court FINDS that the Partnership Agreement comes within the exception recited in § 365(e)(2)(A) and, accordingly, AFFIRMS the decision of the bankruptcy court with respect to this issue.

### 4. Determination of Whether Cause Exists to Lift the Mandatory Stay Imposed Pursuant to § 362(a)

Finally, Catron claims that the bankruptcy court erred when it found that cause existed under § 362(d)(1) compelling it to grant appellees relief from the stay imposed under subsection (a) of this section, which section provides in pertinent part:
On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; ....

11 U.S.C. § 362(d).

Section 361 enumerates what may constitute "adequate protection" when "adequate protection is required ... of an interest of an entity in property":
[S]uch adequate protection may be provided by—

---

**11.** *See supra* at 637–38.

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, . . . results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien . . . ; or

(3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

■■■ This court begins its analysis by noting that "[a] decision to lift the automatic stay under section 362 of the Code is within the discretion of the bankruptcy judge and . . . may be overturned on appeal only for abuse of discretion." *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir.1992) (citing *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir.1985)); *see also Elliott v. Hardison*, 25 B.R. 305, 307–08 (E.D.Va.1982) ("Because the statute commits the decision to lift the stay to the discretion of the bankruptcy judge, his decision may be overturned only upon a showing of abuse of discretion.").

The bankruptcy court below clearly enunciated the reasons for its decision:

Here the evidence shows that the debtor failed twice prepetition to meet his obligation to respond to capital calls and that he has no likelihood of meeting future capital calls. The court further finds that the viability of the partnership enterprise depends upon the ability of the debtor, as 50% equity holder, to continue his financial support. Without contribution from the debtor, the remaining partners must significantly increase their own capital contributions far in excess of the proportion they agreed to contribute when they assumed their equity shares.

I conclude that by shifting his share of contribution in effect onto his partners, the debtor has improved his position at their expense. Unless the court lifts the stay to permit the remaining partners to exercise their option to purchase the debtor's share, the debtor will benefit from preservation of a contract which he would otherwise be unable to preserve. The mantle of bankruptcy shall not be used to cloak the debtor so completely as to shelter those interests which the debtor has no legal right to retain.

Accordingly, I find that the burden left upon the remaining partners sufficiently establishes cause under § 365(d)(1) for lifting the automatic stay.

Mem.Op. 158 B.R. at 629 (citation omitted).

The court agrees with the reasoning expounded by the bankruptcy court. Appellant Catron has not provided adequate protection to his partners. Rather, he is attempting to ride "piggyback" on their financial resources. Accordingly, the court FINDS that the bankruptcy court did not abuse its discretion and AFFIRMS that court's decision to lift the automatic stay.

### IV. Conclusion

The bankruptcy court neither committed clear error in its factual findings, nor erred in its legal conclusions, nor abused its discretion in lifting the automatic stay. Accordingly, the judgment of the bankruptcy court is AFFIRMED.

The Clerk is DIRECTED to forward a copy of this Opinion to counsel of record for the parties, to the United States Trustee, and to the bankruptcy court.

It is so ORDERED.